## TEXAS CO. v. BLACKSTOCK. (No. 605.)

Court of Civil Appeals of Texas. Eastland. Oct. 11, 1929.

Rehearing Denied Nov. 1, 1929.

**14**

Coombes & Andrews, of Stamford, and Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

Bouldin & Zivley, of Mineral Wells, and F. L. Kuykendall, of Albany, for appellee.

HICKMAN, C. J. This suit was instituted by appellee against appellant for damages growing out of injuries received by his daughter, Ermalee Blackstock, alleged to have been caused by the negligence of appellant's truck driver. The trial resulted in a judgment for appellee for $1,000. The elements of damages submitted to the jury were bills for hospital, doctors, medicine, bandages, and drugs theretofore incurred and which might thereafter be incurred during the minority of the daughter, the value of the services of appellee and his wife in attending their daughter during the time of her injury, and the value in money of the services which the daughter would have contributed to appellee during her minority, had said injuries not been sustained by her. The facts are practically undisputed, and are, in brief, as follows:

On the date of the injury, Roy Ledbetter was in charge of a truck belonging to appellant, hauling oil well supplies for appellant on the Moran and Cisco Highway in Shackelford county. About a mile and a half or two miles south of Moran he overtook Ermalee Blackstock, the nine year old daughter of appellee, who was being sent on an errand to Moran by her parents, and invited her to ride in the truck with him. According to Ledbetter's testimony, the right door of the cab of his truck would not open easily, and he opened the left door, climbed down, and assisted the child to get in the truck on that side. She was seated on the seat with Ledbetter and to his right. Upon reaching the outskirts of Moran the truck was stopped, Ledbetter descended from the truck on the left side, and helped the child to alight on that side. The highway was paved and was about 16 feet wide. The evidence would support the conclusion that the truck was stopped in the middle of the highway or to the left of the middle thereof. When Ledbetter assisted the child in alighting from the truck on the left-hand side thereof, according to her testimony, he told her to run. Before she reached the left side of the pavement, which was but a few feet from where she alighted, an automobile driven by Abe Hiller, and which was proceeding down the highway in the same direction in which the truck was pointed, struck her and inflicted serious injuries upon her. There was a conflict in the testimony as to why the child left the truck at this particular point, she testifying that Ledbetter told her he was turning off the highway there and was going no further in her direction, and Ledbetter testifying that the child asked to get out there.

In its charge to the jury the court defined "ordinary care," "negligence," "proximate cause," and "efficient and intervening cause," after which three special issues were submitted. The first special issue was as follows: "Under all the facts and circumstances in this case and under the conditions existing at the time of the injury of Ermalee Blackstock, was the operator or driver of the defendant's truck negligent, as that term has been heretofore defined to you, in the way and manner in which he allowed the said Ermalee Blackstock to alight from said truck?" This issue was answered, "Yes."

By their answers to the second and third issues the jury determined that such negligence was the proximate cause of the injuries and that appellee was damaged in the sum of $1,000. No questions are presented here as to any rulings of the court except the failure to peremptorily instruct the jury, at appellant's request, to return a verdict in its favor. The only question before us, therefore, is whether as a matter of law the evidence, taken in the light most favorable to appellee, was sufficient to establish a case of liability against appellant. It is not urged that the evidence was insufficient to sustain the finding of negligence on the part of Ledbetter in failing to use ordinary care in assisting the child to alight, but the insistence is that no liability was shown on the part of appellant under the doctrine of respondeat superior.

█ The driver of the truck had no authority, actual or implied, to invite the child to ride on the truck, and no right of action against his master resulted from the invitation. Cook v. Navigation Co., 76 Tex. 353, 13 S. W. 475, 476, 18 Am. St. Rep. 52; Smith Bros. v. Williams (Tex. Civ. App.) 294 S. W. 309 (error refused).

We must therefore view this case as if the child got on board the truck without an invitation to do so. It would be unfair to the girl to call her a trespasser, in so far as the

term implies any wrongful act on her part; but as to the company she was not rightfully on the truck, and the liability of the company to her must be governed by the same rules which would govern in the case of a child found by the truck driver on the truck.

■ The instant the child came on board the truck, regardless of how she came there, the law created certain duties and obligations against the owner thereof with regard to her safety. These duties and obligations arose by virtue of the situation then created and out of considerations of humanity and the immaturity of the child. One of the duties owing by the master was not to permit her to be on board if her presence there was dangerous. This duty is declared in the following cases, in which facts similar to those in this case existed: Cook v. Navigation Co., supra; M., K. & T. R. Co. v. Rodgers, 89 Tex. 675, 36 S. W. 243; Smith Bros. v. Williams, supra.

In the case of Cook v. Navigation Co., Justice Gaines used this language, in expressing the basis of the liability of the master to a child of immature years and lacking in discretion who came on board a tug boat on the unauthorized invitation of members of the crew: "But we think it was the duty of the company not to permit them on board, if their presence there was dangerous. When the company left the management of the boat to its servants the duty devolved upon them, and it cannot be permitted to say that their action in allowing the children on the boat was contrary to orders, and that it is not liable. A master is liable for the wrongful acts of his servant, done within the scope of his authority, although they be done in disobedience of express orders."

■ Assuming that the child in the instant case was lacking in discretion (a question which we shall notice later), then it follows from the above authorities that the master was liable for her injuries if it was dangerous for her to be on the truck, and if she was injured by reason of such dangerous situation. We think it could not be said, as an abstract proposition, that a truck is dangerous machinery, nor could it be said that the injuries in this case were produced by any inherent dangers therein. Neither do we think it could be said, as an abstract proposition, that a tugboat (as in the Cook Case, supra), a hand car (as in the Rodgers Case, supra), or the back end of a truck (as in the Smith Bros. Case, supra), is dangerous. But a tugboat in water with a pile of wood near the rim thereof, a hand car operated on a railroad track, and a truck with a child seated on it back of the driver's cab and operated on a rough road, were each held to be dangerous in the above cases. Similarly, we think a truck on a frequently traveled, paved highway with a child seated on the right-hand side of the seat thereof, under the necessity at some time to alight therefrom, with the corresponding duty on the part of the owner to permit her to alight, and with the door on the right side not in working order, is a dangerous situation. The highway and closed door, in the light of the requirement of law that vehicles pass to the left-hand side of the truck, may as properly be considered as a part of the premises for the purpose of determining this question as the water and the pile of wood in the tugboat case. Thus viewed, the injuries to the child grew out of the dangerous condition or situation in which she was placed.

We appreciate that some distinctions may be pointed out between this case and the cited cases, but viewed as a whole in the broader sense, we think those cases afforded sufficient authority for the trial court to refuse to give the peremptory instruction requested by appellant.

■ Of one thing we think there can be no doubt. When the child started to alight she was then in a dangerous position, which was known to the master, and under well-established rules the master then owed her the duty to exercise ordinary care to remove her to a place of safety. This duty it wholly failed to perform.

■ Considering the rule announced in the Cook Case from another angle, its applicability to the facts in the instant case is readily perceived. As noted, it was there announced that it was the duty of the master not to permit the child on board. That is but a negative statement of the master's duty. Stated affirmatively, the rule is that it was the duty of the master when he discovered the child aboard to immediately remove it. The duty to remove carries with it the duty to exercise ordinary care in the manner of removal so as not to expose the child to unnecessary hazards.

There is another view, which, to our minds, leads to the same result. This view seems to have been the one entertained by the trial court, as is evidenced by the particular ground of negligence submitted to the jury. This ground related to the manner in which the truck driver permitted the child to alight from the truck. As above pointed out, conceding that as to the master the child was a trespasser, still the master owed it certain duties. The general common-law rule was that that duty was not to wantonly or willfully injure the trespasser. We think, under the decisions of our state, a greater duty than the negative duty of refraining from wantonly and willfully injuring a trespasser is imposed upon the master of a vehicle having notice of the presence of a child of tender years thereon.

In the case of Gulf, T. & W. Ry. Co. v. Dickey, 108 Tex. 126, 187 S. W. 184, a boy eight years of age was on a locomotive engine at the invitation of one not authorized to invite him thereon, and was injured through the negligence of an employee of the railroad company in turning on an injector used by him in connection with his employment. Our

Supreme Court, speaking through Chief Justice Phillips, held that the employee was under the obligation to use the care of an ordinarily prudent person under the circumstances.

In the case of T. & P. Ry. Co. v. Mother, 5 Tex. Civ. App. 87, 24 S. W. 79, 81 (error refused), a youth was a trespasser on the appellant's freight train, attempting to ride thereon without paying his fare, by concealing himself in a box car, in known violation of the rules of the company. A brakeman on the train, who was shown by the facts to have implied authority in the premises, by abusive language and gestures, caused the boy to attempt to leave the train while in motion by crawling through a small window in the end thereof near the top, in doing which he fell and was run over by the car and killed. The question was presented as to the duty owing by the company to the trespasser under the circumstances, and in disposing of that question Justice Head of the Fort Worth court used the following language: "We are therefore of opinion that the question in this case was not one of gross negligence, such as would have been necessary to render appellant liable for failing to discover and provide against injury to a trespasser in the conduct of its business, but the question was, what degree of care was required of it, after the trespasser had been discovered, in expelling him from its premises? And under such circumstances we think it was bound to afford him an opportunity to leave the car without exposing him to unnecessary danger."

The opinion contains this further language: "The charge very clearly left the jury to decide as to whether Mother was compelled to leave the car under such circumstances as to make it 'dangerous,' as thus defined; and, if their finding be sustained by the evidence, we are of opinion the company would be liable, whether the car was standing still or in motion. * * * There is no conflict in the evidence as to the brakeman's knowledge of the manner in which deceased was required to leave the car (through the 'cuddy hole'); and under such circumstances we are not prepared to hold that it was necessary for its servant's act to have been grossly improper, to render appellant liable. · Railway Co. v. Robinson [4 Tex. Civ. App. 121, 23 S. W. 433], supra."

These cases are but illustrative of the general rule obtaining in this state and lead to the conclusion that, had the truck driver in the instant case discovered this child upon the truck and had undertaken to eject her therefrom in the exact manner disclosed by this record, the master would have been liable for the injuries which she sustained. To hold the master not liable for the negligence of its servant in the manner of ejecting appellee's daughter, regardless of the reasoning which may be employed to arrive at that conclusion, has the ultimate effect of placing this girl in a less advantageous position than she would have been had she stolen a ride on this truck. Such a conclusion should be avoided. To quote the language of the Supreme Court of Ohio, in the case of Higbee Co. v. Jackson, 101 Ohio St. 75, 128 N. E. 61, 65, 14 A. L. R. 131: "By that process the child has less right when he asks permission to ride than if he heedlessly jumps on without permission. Such a rule would put a premium on fraud. A driver who had wantonly injured a child could assert that he had in violation of his authority and his instructions invited the child to ride, and in such case the law would leave the unsuspecting child to the mercy of the wanton and unlawful conduct of the driver."

■ But it is insisted that in taking the child from the truck the truck driver, was but completing his unauthorized act of inviting her thereon, and his master would be no more liable for injuries received by the child while alighting than it would have been for injuries which it might have received in crossing the road to come aboard the truck, and that the purpose of placing the child on the highway was not ejectment, but was turning aside from the master's business to complete the unauthorized act of the employee. It is difficult to think of this act of alighting dissociated from the invitation, but the ends of justice require that we do so or else place this child at a greater disadvantage than she would have been under had she been uninvited. This case must be decided just as it would be had the facts shown that the child was assisted to alight by another truck driver who took charge of the truck after the unauthorized invitation by Ledbetter and without knowledge thereof. We again quote from the Supreme Court of Ohio in the Higbee Case, supra, as follows: "The unauthorized consent to ride was given more than half a mile from the scene of injury. It was a mere incident, and had nothing to do with the collision. Otherwise, no trespasser could recover under any circumstances at any place. A different view leads to illogical and intolerable conclusions— that is to say, the lack of authority in the driver to consent makes the child a trespasser, though he may not have known of such lack, and we then change to the other edge of the sword, and cut off even the rights of a trespasser, because of the consent."

According to the testimony of the child, she did not ask to get off the truck, but it was the truck driver who told her to get off. To relieve the master of that duty, when it undertook to remove her from the truck which is imposed upon one undertaking to eject a trespasser, on the ground that the servant was not in the course of his employment in removing her, takes into consideration and gives controlling effect to the unauthorized invitation to come aboard, which, as above stated, was but a mere incident. The truck driver in this

instance occupied the position analogous to that of a conductor on a train. He had necessarily the implied authority to eject a trespasser, and his master would be liable for his wrongful manner of ejecting one into a place of danger. To exonerate the master is to give him the benefit of the unauthorized act of his employee in inviting the child to ride on the truck, without imposing upon him any liability on account of such invitation.

According to Ledbetter's testimony, the child was put off at the particular place shown by the evidence, not at his suggestion, but because she requested to be put off there. Viewing the transaction from this standpoint, and assuming the child still to be a trespasser, when she requested the truck driver to allow her to get off the truck and he undertook to do so, she being without discretion sufficient to understand the nature of the dangers attendant thereupon, it was his duty and the duty of his master whom he was representing to afford her an opportunity to alight safely, and not to put her off in a place of danger.

■ We overrule the contention that, as a matter of law, there was an independent, efficient, intervening cause shown by the evidence which had the effect of preventing the negligence of the appellant from being the proximate cause of the injuries. True, the injuries were inflicted by Abe Hiller, the operator of a passing car, but that fact within itself is not sufficient to relieve appellant of liability for such injuries. The proximate cause is not necessarily the sole cause. One whose negligence results in injury to another may be held liable therefor, notwithstanding an intervening agency operates at the same time, if the injury or some like injury should have been reasonably foreseen to follow as a consequence of the negligence. We think this is well established by many cases, of which we cite the following: Seale v. G. C. & S. F. Ry. Co., 65 Tex. 278, 57 Am. Rep. 602; T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Missouri, K. & T. R. Co. v. Cardwell (Tex. Civ. App.) 187 S. W. 1076, and cases there cited; Trinity & B. V. R. Co. v. Blackshear, 106 Tex. 515, 172 S. W. 544, L. R. A. 1915D, 278; City of Lubbock v. Bagwell (Tex. Civ. App.) 206 S. W. 371; Chicago, R. I. & G. R. Co. v. Sears (Tex. Com. App.) 210 S. W. 684.

■ The opinion thus far is based upon the assumption that the injured child was not possessed of sufficient intelligence and discretion to understand the dangers attendant upon her. But it is insisted by appellant that the judgment is wholly without support in the verdict because there was no finding by the jury upon this issue. We think it is well settled in Cook v. Navigation Co., supra, and Ry. v. Rodgers, supra, that appellee's right of recovery herein is based essentially upon the establishment of the issue of fact as to whether this child was possessed of such intelligence and discretion. It is insisted that such issue was included in the first issue submitting negligence. We think this issue was not included in the ultimate issue of negligence. It was an essential issue and not merely an evidentiary fact in another issue. The jury might well have found negligence on account of stopping the truck on the wrong side of the highway. There is no mention of lack of discretion in the charge, and no indication that the jury considered the fact. But, if the jury did consider it, we have no way of determining by the record what its conclusion was. It may be such an issue as we would be authorized under article 2190, Rev. St. 1925, to presume, in support of the judgment, to have been found in appellee's favor, provided there is evidence in the record to support it. But we find no support thereof in the record. The father testified that the child was "bright." She was frequently sent by her parents along and over this highway, and on the day of her injuries was on the highway on an errand for her mother. There is no testimony concerning her lack of discretion. True, as urged, the jury had an opportunity to observe her on the witness stand and in the courtroom, but we have not that opportunity, and our finding of evidence to support an unsubmitted issue must be based upon the record before us.

The contention that this question was not raised by the assignments is contrary to our holding in Ratcliffe v. Ormsby, 298 S. W. 930, which was affirmed by the Supreme Court in Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. It is therefore overruled.

For the error indicated, the judgment of the trial court is reversed and the cause remanded.