**SOUTH PLAINS COACHES, Inc., v. BOX.**

**No. 4823.**

Court of Civil Appeals of Texas. Amarillo.
Dec. 6, 1937.

Rehearing Denied Jan. 10, 1938.

E. L. Klett, of Lubbock, for appellant.

**1152**

Mullican & Nelson, of Lubbock, and Edmund C. Yates and Scarborough & Ely, all of Abilene, for appellee.

JACKSON, Chief Justice.

The record shows that the appellant, South Plains Coaches, Inc., is a common carrier engaged in transporting for hire passengers from Lubbock, Tex., by way of Crosbyton, Guthrie, and Benjamin to Wichita Falls. On May 3, 1935, Mrs. Box, the wife of appellee, L. E. Box, purchased from appellant's agent at Crosbyton a ticket entitling her to transportation; she became a passenger on its bus, which proceeded on its journey to a point several miles east of Guthrie where it stopped on account of some minor mechanical trouble; while stopped the driver informed Mrs. Box that the bus would be delayed for repairs and requested her to get off the bus and get in another car on which he had arranged for her to go on to Benjamin and wait until the bus arrived; that in compliance with these requests, she left the bus, got on the other automobile, which was what is known as a Ford pick-up; she thereafter soon discovered that the driver of the Ford pick-up was drunk; he struck her, made indecent proposals to her, and assaulted her; she begged him to let her out, which he at first refused to do, but afterwards because she refused to accede to his lascivious request, he forcibly ejected her from the Ford pick-up at a lonely and uninhabitated place between Guthrie in King county and Benjamin in Knox county. It was after dark, raining and snowing at intervals, and she started to return to the bus from which she had been requested to alight, but was picked up by a friendly passerby and carried on to Benjamin where she waited until the bus arrived. She was at the time sixty years old, a mother and a grandmother.

The appellee, L. E. Box, instituted this suit in the district court of Lubbock county to recover damages against the appellant for personal injuries sustained by his wife on account of the alleged negligence of appellant. He pleaded physical injuries, humiliation, pain and mental anguish, the duty of appellant to safely transport his wife to her destination and protect her from harm, insult, and injuries; that the failure to perform such duty was negligence; that such duty could not be delegated, and the attempted delegation thereof to the driver of the Ford pick-up was negligence; that by such attempted delegation, the driver of the Ford pick-up became the agent of appellant; and that each and all of said acts of negligence was a direct and proximate cause of the damages and injuries complained of.

The appellant answered by general demurrer and general denial.

In response to special issues, the jury found, in effect, that the driver of appellant's bus requested Mrs. Box to alight therefrom and enter the Ford pick-up; that in making the change she acted at the request of the bus driver; that she did not ask him to get a way for her to go on to Benjamin and he was not acting for her when he engaged passage for her with the driver of the Ford pick-up; that the driver of the Ford pick-up struck and used insulting language to her; that she received personal injuries as a result of being so struck, suffered injuries to her nervous system by reason of the mistreatment she received from the driver of the Ford pick-up; that the driver of the bus was guilty of negligence in placing Mrs. Box in the Ford pick-up and such negligence was a proximate cause of her injuries; that the appellant was negligent in the selection of the driver of the Ford pick-up, and that such negligence was a proximate cause of the injuries, and appellee had been damaged in the sum of $2,500.

Upon these findings the court rendered judgment that appellee have and recover of and from appellant the sum so found, with interest thereon at the rate of 6 per cent. per annum from December 9, 1936, and for cost.

The appellant, by proper assignments, urges as error the action of the court in refusing to give its requested instruction directing a verdict in its behalf because the relationship of carrier and passenger created when Mrs. Box purchased a ticket and boarded the bus ceased when she abandoned the bus and entered the Ford pick-up, since she failed to allege or prove that the bus driver had authority to engage passage for her on another vehicle, request her to leave the passenger bus and continue on to Benjamin on the Ford pick-up.

Appellant was a common carrier, had a permit from the Railroad Commission of Texas to operate a bus line and transport passengers for hire over the route on which the injuries occurred, and was engaged in operating its bus line about May 3, 1935.

The evidence shows conclusively that Mr. Cunningham, the driver of appellant's passenger bus on the occasion in question, was the only agent or employee of appellant accompanying the bus, and was in complete control and charge thereof. It is not claimed that Mrs. Box was guilty of contributory negligence, and the jury found that she did not request the driver to arrange passage for her on the Ford pick-up, and that he was not acting for her when he made such arrangements. She was instructed by the bus driver to wait at Benjamin in the station of appellant until the bus arrived. Her luggage was left on the bus, and when the latter reached Benjamin, she was at the station, entered the bus, and was carried on to Wichita Falls. Under this record, the contention that Mrs. Box abandoned the bus and ceased to be a passenger of appellant are not tenable.

In St. Louis Southwestern Ry. Co. of Texas v. Foster, Tex.Civ.App., 112 S.W. 797, 799, the court held: "When the relation of carrier and passenger is once established it usually continues till the end of the journey, unless it is sooner terminated by the voluntary act of the passenger. * * * The transportation of the passenger is not the only duty imposed by law upon the carrier. There is a certain degree of care required to be exercised for the passenger's comfort and convenience, as well as for his personal protection against injury. This duty extends to protection from those having no connection with the carrier, as in cases of assault from strangers."

The bus was accompanied by no agent or servant of appellant other than the driver, and he was acting not only in the capacity of the driver, but also in the capacity of conductor with authority such as is exercised by the conductor on a train. Texas Co. v. Blackstock, Tex.Civ.App., 21 S.W.2d 13.

The appellant is a corporation and can act only through agents. It is shown that Mr. Cunningham was in charge and control of the bus, acting in a capacity analogous to that of a train conductor, and as special agent of appellant, had such authority as this position implied. International & G. N. Ry. Co. v. Anderson, 82 Tex. 516, 17 S.W. 1039, 27 Am.St.Rep. 902. The agency having been established, there is a rebuttable presumption that his act was within the scope of his authority. These facts, if not controverted, would authorize a finding in behalf of appellee and a directed verdict in behalf of appellant would have been error. Cyclopedia of Automobile Law and Practice, volume 10, paragraph 6638, page 411.

The appellant presents as error the action of the court in refusing its requested issues asking whether or not the bus driver had authority to engage a stranger to carry Mrs. Box on a Ford pick-up to the city of Benjamin, and whether such bus driver was acting within the scope of his employment in transferring Mrs. Box from the bus of appellant to the Ford pick-up.

Mr. Bowman, the manager of appellant, testified that all bus companies, including the South Plains Coaches, Inc., had rules and regulations forbidding the drivers of their buses to transfer a passenger from the bus to some other vehicle for transportation; that appellant's rules were usually printed and posted in the bus station, and all drivers for his company were advised of such rule. In case of minor trouble they were required to obtain repairs at the closest garage, and in case of serious trouble to call the office and another bus would be sent to complete the trip; that the rule is necessary because of the disposition of passengers, when any trouble occurs, to insist on being sent, without delay, on to their destination and to get off the bus and secure transportation for themselves. The driver, Mr. Cunningham, testified that he had no authority and the rules of his company forbade him from making arrangements for Mrs. Box to get on the Ford pick-up and ride it to Benjamin. This testimony presents a fact issue as to the authority of the bus driver to employ the driver of the Ford pick-up and send Mrs. Box to Benjamin by him.

In Texas & P. Ry. Co. v. Black, 87 Tex. 160, 27 S.W. 118–120, the court says: "It cannot be said that a disobedience of orders can annul the order, except upon the principle that the officers, knowing of the violation, ratify it, and waive the rule forbidding it. Whatever falls short of this will not serve to confer authority upon or enlarge the powers of an agent."

There is nothing in the record to even suggest that the rule had ever been previously violated.

It will be observed that appellee does not seek a recovery for the ejection of his wife from appellant's bus, but for the injuries inflicted on her by the driver of the

Ford pick-up to whom he claims appellant had negligently delegated its duties and for whose torts it became liable. The driver of the Ford pick-up could have been a subagent only if the driver of appellant's passenger bus had express or implied authority to engage him to carry Mrs. Box on to Benjamin. In 2 C.J. p. 855, par. 539, the law is stated as follows: "The liability of the principal for the torts of a subagent depends upon the question whether the primary agent was authorized expressly or impliedly to appoint the subagent. If the primary agent was authorized to appoint a subagent so as to create a privity between the principal and the subagent, the principal is liable for the torts of the latter in like manner as for the torts of an agent appointed directly by the principal, but he is not as a rule liable for the torts of a subagent appointed without authority."

In 3 C.J.Secundum, Agency, page 328, in discussing the nature and extent of an agent's authority, it is said: "Usually and ordinarily the nature and extent of the authority of an agent and whether the act or contract in controversy was within the scope of his authority are, under the evidence, questions of fact to be determined by the jury or other trier of facts, and the court may and should decline to take such questions from the jury * * * by granting a nonsuit, directing a verdict, or otherwise. The foregoing rule as stated above is applicable to questions of actual, real, express, implied, secret, or apparent or ostensible authority."

In Cyclopedia of Automobile Law and Practice, Blashfield, volume 10, page 405, it is said: "The question of whether the negligent driver causing an accident was acting within the scope of his employment for the owner, at the time of the accident, so as to render his master liable, must also be determined by the jury, where the evidence is conflicting."

For Texas authorities, see Universal Transportation Co. v. Ramos, Tex.Civ.App., 37 S.W.2d 238; Guitar et al. v. Wheeler et al., Tex.Civ.App., 36 S.W.2d 325; Miller v. Diamond et al., Tex.Civ.App., 25 S.W.2d 659.

In passing upon whether the agent was acting within the scope of his authority when he falsely imprisoned a customer to enforce payment of a bill for oil and gas, the court in Magnolia Petroleum Co. v. Guffey, Tex.Civ.App., 59 S.W.2d 174, 178, said: "We think the evidence was not undisputed,

and that 'the question of authority or not is one of fact to be determined by the jury like any other issue, and not a matter of law to be decided by the court.'" (Citing authorities.)

This holding was impliedly approved by the Supreme Court in its opinion on the same case reported in 102 S.W.2d 408.

■ The appellant assails as error the action of the trial court in refusing to set aside the verdict and give him a new trial because of the misconduct of the jury.

Only four of the jurors were called as witnesses, and there is no substantial difference in their testimony as to what occurred relative to insurance. Without giving the name of the juror who testified, the evidence is that, "Pretty soon after our deliberation started; after we had been out half an hour, maybe," and "at different intervals" before a verdict was agreed upon, it was said, "That probably the * * * bus company carried insurance to offset damages to the company. The other jurors were present. That probably the insurance company would have to pay it." In referring to the doctor bills and attorneys' fees, that: "It would have to come out of this (the verdict) * * * That would be sufficient to meet all of these expenses that might come out of it and then leave the old lady something besides. That probably attorneys' fees and doctor bills would not leave the old lady very much. Probably attorneys' fees would run half of what she recovered. These things were mentioned casually. As to being discussed as a body, they were not * * *. While I don't think they were mentioned as a body, the boys talked about those things." The "statement made with reference to insurance" was made "during the time we was waiting for two fellows to make up their minds."

Each of the witnesses say these statements were made during the deliberation of the jury and are sufficient, in our opinion, to disclose that such discussion was misconduct.

In Page v. Thomas, 123 Tex. 368, 71 S.W. 2d 234, Judge Critz held in a suit growing out of a collision between a motorbus and a Ford car that testimony by the appellee suggesting that the owner of a motorbus carried insurance was reversible error.

In Texas & P. Ry. Co. v. Gillette, 125 Tex. 563, 83 S.W.2d 307, 308, 309, Judge Hickman, speaking for the Supreme Court, says: "At some time not definitely fixed

by the record, but during the trial of the case, the question of the amount of the attorney's fees was discussed by some of the jurors while all were not present. One juror stated, 'I think they split about half.' Another said, 'No, I think between 25% and ⅓, between ¼ and ⅓.' That this was misconduct calculated to prejudice the rights of the railway company is not an open question."

After citing numerous authorities and stating that when the question of attorneys' fees was mentioned, "the foreman at once admonished the juror so mentioning it that it was not a proper element to consider," the court continues: "If one juror probably agreed to the amount of the damages by reason of this private discussion, the verdict should not be permitted to stand, even though the other jurors knew nothing of it and were not, therefore, influenced thereby."

The judgment is reversed and the cause remanded.