**ROGERS et al. v. DALLAS RY. &
TERMINAL CO.**

No. 13936.

Court of Civil Appeals of Texas. Dallas.
July 23, 1948.

Rehearing Denied Oct. 22, 1948.

Thos. T. Lewis and Golden, Croley &
Howell, all of Dallas, for appellants.

Burford, Ryburn, Hincks & Ford, of
Dallas, for appellee.

LOONEY, Justice.

H. E. Rogers as next friend for his
daughter Venetia Rogers, a girl eleven
years of age, brought this action against
Dallas Railway & Terminal Company to
recover damages for personal injuries sus-

tained by Venetia on May 23, 1945 in an accidental collision with a bus owned and operated by the defendant. H. E. Rogers also sued in his own behalf to recover damages for loss of the services of his daughter and the necessary expenses incurred for medical treatment and hospitalization due to the personal injury sustained by the minor. The facts, in short, are these: The bus involved in the present controversy was proceeding east on Elm Street and making a left turn from Elm to Harwood, as required by its route, to a passenger stop on Harwood immediately after completing the left turn. Venetia Rogers, the minor plaintiff, was one of a group of five or six girls who had been to the Dallas Public Library and were going home at the time the accident occurred. The girls walked north on Harwood in a group, across Elm to the corner of the intersection marked "Hart's Furniture" as shown upon the plat in the record (S.F., p. 261–A); there they paused until they had a green light; then proceeded east across Harwood on the crosswalk specially marked for that purpose, to the opposite corner near the bus stop. The bus, proceeding through the intersection east on Elm, turned to the left on Harwood, crossing the walkway where the collision occurred in which Venetia sustained severe injuries to her left foot and leg. The jury found the defendant guilty of actionable negligence in several respects, but recovery was denied plaintiffs, as the jury found that Venetia was guilty of contributory negligence in failing to keep a proper lookout on the occasion; also in failing to stop immediately before colliding with the bus.

Plaintiffs contended throughout that the minor was only required to use that degree of care a child of like age, intelligence, capacity and experience would have used under the same or similar circumstances. This contention was raised and preserved by exceptions urged to defendant's plea of contributory negligence; was urged in a trial amendment alleging the age of the minor and that she lacked the judgment, experience and capacity of a reasonably prudent adult; hence was only required to exercise that degree of care for her own safety that an ordinary child of like age, experience, intelligence and capacity would have exercised under the same or similar circumstances; also urged objections to the court's charge and specially requested issues presenting the question; all of which being denied, the court gave the usual definition of negligence, ordinary care, and proper lookout, applicable to an adult, and refused to limit or qualify same in any way as applied to the minor plaintiff.

The first five points of error urged by plaintiffs are as follows: First: Error of the court in refusing to give plaintiffs' requested instruction No. 3, reading "By the term 'ordinary care' as applied to a minor child, and as used in special issue No. 15 (given in the court's charge), is meant such care as an ordinarily prudent person of the age, intelligence, experience, and capacity of such child would have exercised under the same or similar circumstances." Second: Error of the court in refusing to give plaintiffs' requested instruction No. 2, reading "By the term 'proper lookout' as that term is used in special issues Nos. 11 and 13 (given by the court), and as applied to a minor child is meant such lookout as a person of like age, intelligence, experience, and capacity in the exercise of ordinary care would have kept under the same or similar circumstances." Third: Error of the court in refusing to give plaintiffs' requested instruction No. 1, reading "Negligence as applied to a minor child, as it relates to and bears upon proper lookout, used in special issues Nos. 11 and 13 (given by the court) and in the definition of unavoidable accident, as the doing of that which an ordinarily prudent person of the age, intelligence, experience, and capacity of such child would not do under the same or similar circumstances, or the failure to do that which an ordinarily prudent person of the age, intelligence, experience, and capacity of such child would do under the same or similar circumstances." And fourth: Error of the court "in overruling and refusing plaintiffs' objections and exceptions to the court's charge for failure of the court to qualify the definitions of 'ordinary care,' 'negligence,' and 'proper lookout,' so as to measure the

conduct of minor plaintiff by that degree of care required of a child of like age, intelligence, experience, and capacity."

The questions presented by these points of error, in our opinion are so related as to present but one question; therefore, will be discussed as such.

The record discloses that Venetia was a bright girl, made satisfactory grades in school, had received instructions in regard to safety, from time to time had been downtown with other children and with her parents, she realized danger and the necessity of being careful. It was not shown that she was not a normal child or that she suffered from any defects of any nature that would have blunted her faculties. In this situation, plaintiffs' contend that, as she was a child of tender years, they were entitled to have the jury instructed as requested, and that her intelligence, experience and knowledge of life, were merely elements to be taken into consideration by the jury in judging her conduct under the requested issues.

Obviously this contention is based upon the presumption that a child only eleven years of age is so lacking in experience and knowledge of life as to be incapable of exercising the wisdom, caution, and foresight, of an adult. This presumption, in our opinion, underlies many restrictions imposed by law upon the rights and activities of minors; among others, persons under 21 years of age are not permitted to vote, enter into contracts or manage their own business affairs, unless, after reaching 19 years of age, their disability is removed by a court order. Males under 21 years of age and girls under 18 are forbidden to marry without the consent of parent or guardian. Minors under 14 are not permitted to select their own guardians; and those under 15 may not be employed in factories, mills, laundries, etc.; and those under 17 may not be employed in mines or places where explosives are used. Cigarettes or tobacco in any form may not be sold to minors under 16 years of age, and the sale of intoxicating liquors to minors is absolutely forbidden.

It is quite obvious, we think, that these restrictions are bottomed on the presumption that minors under the ages indicated are incapable of exercising that degree of wisdom, prudence, and foresight, presumably possessed by an adult. But, long before man legislated on the subject, the Apostle Paul made an observation having the same meaning. He said: "When I was a child, I spake as a child, I understood as a child, I thought as a child; but when I became a man, I put away childish things." (I Cor. 13—11)

Before beginning the discussion proper, we wish to express our appreciation of the splendid briefs filed by both parties; they are informative and exceedingly helpful to the court.

Examination of the authorities will show that courts the country over have approved measuring a child's conduct charged with contributory negligence, by what a child of like age, intelligence, capacity and experience would have done under the same or similar circumstances. In Restatement of the Law, Torts (1934), Sec. 283e, it is said: "A child of tender years is not required to conform to the standard of behavior which it is reasonable to expect of an adult, but his conduct is to be judged by the standard of behavior to. be expected from a child of like age, intelligence and experience." And in 38 Am.Jur., sec. 204, p. 885: "The standard by which to measure the conduct of a child, as regards the question of contributory negligence, is that degree of care ordinarily exercised by children of the same age, capacity, discretion, knowledge, and experience, under the same or similar circumstances." Texas cases have recognized and followed this rule from an early date. In Houston & T. C. Ry. Co. v. Boozer, 70 Tex. 530, 537, 8 S.W. 119, 121, 8 Am.St.Rep. 615, the case of a ten-year-old boy, Judge Stayton said: "As the case now stands, were the appellee an adult, it seems to us the verdict should be set aside; but we cannot say that the same degree of care should be exacted of a boy of the appellee's age as must be of an adult. Whether he used that care in attempting to cross the track, and in ascertaining the danger that attended his act, incumbent on one of his age, was a question submitted to the

jury * * * the jury were in position to determine whether the acts of the appellee were, in one of his age, the exercise of such care as such a person should exercise."

Nor does the fact that such a child is intelligent, or has had some experience in the matters involved, deprived him of the right to have his conduct measured by a child's standard, under a proper charge. This is clearly pointed out by the court in Galveston Electric Co. v. Antonini, Tex. Civ.App.1913, 152 S.W. 841, 842, writ refused. The plaintiff was between 12 and 13 years old at the time of his injury. The court said: "He was employed by a grocery man as a delivery boy, and had been so employed for two years before the accident. He was an active, energetic boy, had a good memory, and was attentive to his business." Defendant complained of the special charge given with regard to the minor, because there was nothing in the pleading or evidence to show that he was not of sufficient intelligence and discretion to know the danger of attempting to cross a street car track in front of an approaching car. Said the court: "We do not think this is a valid objection to the charge. The degree of care which the law required of appellee is correctly stated in the charge to be 'that degree of care which a person of ordinary prudence of his age, intelligence, and discretion would have used or exercised under the same or similar circumstances.' The question is not simply whether the appellee had sufficient capacity to know that it was dangerous to cross a track in front of an approaching car, but whether a boy of his age, intelligence, and discretion would ordinarily have sufficient prudence or care for his safety not to take the chance that he did of getting across the track before the car would reach the place of his crossing."

In Dr. Pepper Bottling Co. v. Rainboldt, Tex.Civ.App., 66 S.W.2d 496, the six-year-old plaintiff was charged with contributory negligence. There was no pleading or proof that the child was sub-normal in intelligence or mental capacity. The court said, 66 S.W.2d bottom of page 501: "The burden of proof on the issue of contributory negligence on the part of Wanda Louise Rainboldt was on the defendant. In connection therewith the jury were correctly instructed as to what would constitute negligence on her part. The definition was as follows: ' "Negligence," as applied to a minor child, as used herein, is the doing of that which an ordinarily prudent person of the age, intelligence, experience and capacity of such child, would not do under the same or similar circumstances, or the failure to do that which an ordinarily prudent person of the age, intelligence, experience and capacity of such child, would do under the same or similar circumstances.' " In reversing the above case on another ground, Schroeder v. Rainboldt, 1936, 128 Tex. 269; 97 S.W.2d 679, 684, opinion adopted by the Supreme Court, it was said: "We approve the holding of the Court of Civil Appeals upon the question of the company's liability for the acts of Schroeder's helper, Graham; also upon the questions of discovered peril, contributory negligence, and sudden emergency. We find no other reversible error in the case." It will be noted that the charge requested by plaintiffs in this case on negligence employs the identical language approved above.

In Houston & T. C. Ry. Co. v. Roberts, Tex.Civ.App., 201 S.W. 674, 677, modified on second rehearing, Tex.Civ.App., 206 S.W. 382, error refused, the court held that the following charge was correct in the case of a ten-year-old boy: "In passing upon the question of whether or not Benjamin Roberts was guilty of contributory negligence, you are instructed that if you find that he acted with the prudence that a child of his age, intelligence, and experience would use under the same or similar circumstances, then he would not be guilty of contributory negligence." See also, the case of Galveston, H. & S. A. Ry. Co. v. Henry, Tex.Civ.App., 252 S.W. 210, 214, writ refused. Suit by parents for the death of their minor son, age fourteen. The trial court instructed the jury as follows: "Contributory negligence as applied to the minor son of plaintiff means the failure to exercise that degree of care for his own safety as would be used by a boy of the same age, capacity, and experience under the same or similar circumstances." The

railroad complained that as "deceased was fourteen years of age, under the law he is presumed to have possessed a sufficient degree of intelligence to have known and appreciated the danger incident to going upon the platform of the car from which he fell * * * therefore in the absence of proof of his want of discretion the charge was erroneous and hurtful to appellant." The court said: "We cannot agree to appellant's contention. Charges very similar to the one complained of have been frequently approved by our appellate courts."

In the case of J. Weingarten v. Carlisle, Tex.Civ.App., 172 S.W.2d 170, 173, writ refused want of merit, the court held the following definition of proper lookout to be correct in the case of an eight-year-old child: "By the term 'proper lookout', as that term is used in the above special issue, is meant such a lookout as a person of similar age, intelligence, and experience, in the exercise of ordinary care would have kept under the same or similar circumstances."

In Texas & P. Ry. Co. v. Hall, 83 Tex. 675, 19 S.W. 121, 124, suit was brought by the parents to recover damages for the death of their son who, at the time, was slightly under fourteen years of age. Judgment was for the plaintiffs. The railroad on appeal complained of the refusal of the court to give a charge that not only must it be shown that the injury of the deceased was occasioned by the negligent acts of the defendant, but further that it had to be shown that the deceased boy in no way contributed to the same. There was nothing in the requested charge instructing the jury to make allowance for the age of the boy in passing upon his conduct. Said the Court: "These charges should not have been given, because they failed to attach importance to the tender age of the deceased. The charge of the court upon the issue of contributory negligence was full and complete in other respects, and, besides, was made applicable to the case on trial by including the following language: 'You will look to and consider the age of the boy at the time.'"

In the case of Texas & P. Ry. Co. v. Crump, Tex.Civ.App., 110 S.W. 1013, 1014;

the defendant complained of the charge the trial court gave on "Ordinary care" because it took into consideration the age of the boy,—ten years. The appellate court in approving the charge, said: "'The care and caution required of a child is according to his maturity and capacity only; and this is to be determined in each case by the circumstances of such case,' and the conduct of such a child is not to be judged by that of an adult. This view, we think, is supported by the decisions of this state, as well as by those of the United States."

The most recent case on the subject is Blunt v. H. G. Berning, Tex.Civ.App., 211 S.W.2d 773, 774, decided by this Court, in which we affirmed the judgment of the court below that denied recovery on the verdict of the jury finding plaintiff guilty of contributory negligence (writ refused). The child involved in that case was a girl seven years of age, charged with having committed contributory negligence, of which she was convicted. The court below charged the jury, among other things, "that ordinary care when referring to plaintiff 'means that degree of care which would be used by a person of ordinary prudence, of Donnie Faye Blunt's age, experience, capacity, intelligence and discretion.'"

■ In view of these authorities and the reasons stated, we are of opinion that the court erred in the respect set forth in each of the points of error heretofore set out.

At the outset the defendant contends that the court did not err in charging the jury and in refusing requested instructions as contended by the plaintiffs, in that the definitions of "negligence" given by the court embody the phrase "under the same or similar circumstances," arguing that "Obviously, the jury under this portion of the instructions could consider all of the testimony as to the age, capacity, and understanding of the minor plaintiff, in addition to the facts proven as to the accident in making its answers to the special issues submitted."

■ Defendant cites no authority in support of this proposition and we are of opinion that none can be found. The language "under the same or similar circumstances,"

used in the court's definition of negligence, referred to the physical facts and circumstances connected with the accident, and had no reference to the age, discretion, or understanding of the minor. In the case of Texas Co. v. Blackstock, Tex.Civ.App., 21 S.W.2d 13, 17, the Eastland Court, speaking through Judge Hickman, in disposing of a similar situation, said: "We think it is well settled in Cook v. Houston Direct Navigation Co., supra [76 Tex. 353, 13 S.W. 475, 18 Am.St.Rep. 52], and Missouri, K. & T. Ry. Co. of Texas v. Rodgers, supra [89 Tex. 675, 36 S.W. 243], that appellee's right of recovery herein is based essentially upon the establishment of the issue of fact as to whether this child was possessed of such intelligence and discretion. It is insisted that such issue was included in the first issue submitting negligence. We think this issue was not included in the ultimate issue of negligence. It was an essential issue and not merely an evidentiary fact in another issue."

The defendant's main contention, however, as stated in its brief at page 18, is that: "Plaintiff, in order to have Venetia Rogers' conduct judged by a different standard from that of an adult, assumed the burden of showing by a preponderance of the evidence that she was so lacking in experience and intelligence and understanding so as to make it unfair to judge her conduct by the same standard as an adult. The record in this case abundantly shows the failure of the plaintiffs to discharge this burden which the law places upon them."

On the other hand, it was plaintiffs' contention, heretofore stated, that as the minor was of tender years, plaintiffs were entitled to have the jury instructed as requested and that the minor's intelligence, experience, and knowledge of life were merely elements to be taken into consideration by the jury in judging her conduct under the requested issues. The Authorities heretofore cited and quoted, in our opinion amply support plaintiffs' contention. However defendant has cited quite a number of Texas cases which to the casual reader might appear to support the defendant's contention; but we are of opinion that on a careful and critical examination there will be found in each of the cases cited by the defendant some distinguishing feature or element. It would lengthen this opinion out of bounds to discuss each of these cases, but refer to a detailed analysis and discussion in appellants' reply brief in which the cases cited by defendant are distinguished. However, we are of opinion that these cases may be grouped into certain classes; for instance, a number of cases are cited involving the conduct of minors over fourteen years of age. None of these, in our opinion, are in point, in view of the presumption indulged by a number of courts that minors over fourteen years of age are sui juris and appreciate as fully as adults the dangers and consequences of their acts unless plead and proven to the contrary; and in cases like St. Louis S. W. Ry. Co. v. Shiflet, 94 Tex. 131, 58 S.W. 945, involving the conduct of a twelve-year-old boy who went to sleep on a railroad track and was killed, and several attractive nuisance cases, and also cases of the nature of Texas Co. v. Blackstock, Tex.Civ.App., 21 S.W.2d 13, where in each such case it was necessary in order to state a cause of action, to allege and prove that the minor involved was of an immature age and so wanting in discretion or mental capacity to understand and appreciate the dangers of the situation involved; neither of such cases, in our opinion, was in point.

In its sixth point of error plaintiff complains of "The error of the court in excluding from evidence an ordinance of the City of Dallas requiring vehicular traffic to yield right of way to pedestrians lawfully within the intersection and proceeding on a green light within the cross walk."

As heretofore indicated, the accident occurred at the corner of Elm and Harwood Streets; these streets run approximately east and west, and north and south, and cross at right angles. There is a traffic light at this intersection exhibiting alternately red and green lights, signifying respectively "Stop" and "Go." At the time of the injury, Venetia was proceeding in the crosswalk, marked and designated for use by pedestrians crossing Harwood Street.

The bus involved was proceeding east on Elm; made a left-hand turn in a northerly direction into Harwood, moving on the same green light that plaintiff was moving on. It seems that the driver of the bus saw several children on the corner and judged that they were waiting to cross when the light changed, and it seems that he saw Venetia after she had begun crossing and was several feet from the curb. There were a number of people at the crossing going east and some going west. The point at which the collision took place was in the crosswalk. Plaintiff plead and offered in evidence an ordinance of the City of Dallas in support of their plea of the negligent failure of defendant to yield the right-of-way to pedestrians as required by the ordinance. In so far as applicable here, the ordinance reads as follows: "Art. 85-37. Traffic control signal legend. Whenever traffic is controlled by traffic control signals exhibiting the words 'Go', 'Caution', 'Stop', or exhibiting different colored lights successively, the following colors only shall be used, and said terms and lights shall indicate as follows: (a) Green alone or 'Go'. 1. Vehicular traffic facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either or both such turns. But vehicular traffic shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection at the time such signal is exhibited. 2. Pedestrians approaching the intersection may proceed across the roadway within any marked or unmarked crosswalk in the direction vehicular traffic is permitted to travel. * * * (c) Red alone or 'Stop'. 1. Vehicular traffic facing the signal shall stop before entering the nearest crosswalk at an intersection or at such other point as may be indicated by a clearly visible line, and shall remain standing until green or green arrow or 'Go' is shown alone. 2. When sign reading 'Right turn on red' is displayed in connection with traffic signal, vehicle may turn right on red signal, but only after having first come to a complete stop at the nearest crosswalk before entering the intersection, and then only when such right turn does not interfere with pedestrian or other traffic."

The defendant objected to the introduction of the ordinance on the ground that the definition of the word "Intersection" in the Code excluded the crosswalk, and therefore the ordinance giving the right-of-way to pedestrians as provided in the ordinance did not apply to pedestrians in the crosswalk. The definition which the defendant offered in evidence for the limited purpose of making its objection, described the square or parallelogram formed by the extension of the curb lines of the intersecting streets, and the designated crosswalks for the use of pedestrians are lateral strips. These crosswalks, in our opinion, were intended as safety zones, as the ordinance provides that vehicular traffic moving on either green or red lights must yield the right-of-way to such pedestrians. When moving upon green, the vehicle may turn either right or left unless prohibited, but "shall yield the right-of-way to other vehicles or to pedestrians lawfully within the intersection at the time such signal is exhibited." Moving on red when permitted, to turn right "only after having first come to a complete stop at the nearest crosswalk before entering the intersection, and then only when such right turn does not interfere with pedestrian or other traffic."

The ordinance is somewhat disjointed and somewhat ambiguous, yet we think it obvious that a paramount purpose of the enactment was to afford pedestrians proceeding in the crosswalk the measure of protection indicated. To hold that the thousands of pedestrians, of all ages, who, every day and far into the night, crowd the corners of our streets waiting for a change of light, and then plunge into the crosswalk, are excluded from the measure of protection indicated, as insisted by the defendants, would in our opinion be unreasonable and unjust. Such a literalistic, narrow construction should not be indulged as it is quite obvious that pedestrians do not walk in the narrow square or parallelogram defined as the "intersection."

It is a fundamental rule of construction that the legislative intent is the very essence of the law; is its spirit; in fact, is the law, and, when ascertained,

should be enforced and not thwarted. (39 Tex.Jur. p. 166, sec. 90). To arrive at the legislative intent, words or phrases may be either supplied, omitted, or transposed; p. 185, sec. 97. An interpretation should not be adopted that would thwart the legislative intent or lead to an absurdity, injustice, or uncertainty, if such a construction can reasonably be avoided; p. 182, sec. 95. As a means to this end, effect and meaning should be given to each and every sentence, clause, phrase and word of the Act, and a construction avoided that would render any part of the Act inoperative, nugatory, or superfluous; pp. 208, 209, sec. 112. The same doctrine is announced in 39 Tex.Jur. p. 181, as follows: "When necessary to effectuate or preserve the legislative intent, the court will depart from the exact and literal import of a statute, or a particular part, provision or word thereof. Thus it has been decided that words or clauses should not be given their literal meaning when such an interpretation would thwart the plain purpose of the Legislature, or would lead to palpable absurdity, contradiction, injustice or uncertainty, if such construction can reasonably be avoided." Also see Hargrave v. Texas & P. Ry. Co., Tex.Com. App., 12 S.W.2d 1009.

In this connection we call attention to the uniform act regulating traffic on highways, enacted in 1947 by the 50th Legislature, Reg. Session, Ch. 421, Vernon's Session Law, sec. 33, pp. 972, 973, Vernon's Ann.Civ.St. art. 6701d, § 33, dealing with the identical question and employing practically the same language as that of the ordinance, is quite explicit in meaning, while the ordinance is somewhat ambiguous; although in our opinion it is quite evident that each act had in view the same purpose, that is, vehicles were to yield the right-of-way to pedestrians. The pertinent provisions of the Act of the Legislature are as follows: "(a) Green alone or 'Go.' 1. Vehicular traffic facing the signal, except when prohibited under Section 83, may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic, including vehicles turning right or left, shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited. 2. Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk."

So we conclude that pedestrian traffic is clearly included within the protection afforded by this ordinance, and that the court erred in excluding same from the evidence and thus depriving plaintiffs of the benefit of that issue. Although the evidence is conflicting on the point, the defendant claiming that the minor girl walked into the side of the bus and thus received her injury, there was other evidence that would have justified the conclusion that she was struck by the front end of the bus. This evidence was shown by the testimony of two of the girls in the group. See testimony of Barbara Champion, s. f., p. 14, and that of Joyce Strode, s. f., p. 24, to the effect that the front end of the bus struck Venetia and knocked her down. Venetia testified that she was looking straight ahead at the time.

If this ordinance had not been excluded, in view of the evidence, plaintiffs would have been entitled to submission of the issue and the application of the doctrine announced by the Supreme Court in Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W. 2d 1063, 1065, where it was said: "A pedestrian crossing a street on a proper signal light is not charged by law with the duty of looking up the street beyond the intersection to discover approaching cars and anticipating that the drivers may disobey signal lights."

In view of the authorities heretofore set out and the reasons given, we are of opinion that the court erred in the respects set forth in the points of error as contended by the plaintiffs. The judgment of the court, in our opinion, should be and hereby is reversed and the cause remanded to the trial court for further proceedings.