## COLEMAN MUT. AID ASS'N v. MUSE.

### No. 7910.

Court of Civil Appeals of Texas. Austin.

Dec. 30, 1933.

Rehearing Denied Jan. 10, 1934.

Critz & Woodward, of Coleman, for appellant.

Lee & Muse and Callaway & Callaway, all of Brownwood, for appellee.

McCLENDON, Chief Justice.

Suit by appellee (the insured) against appellant (the insurer—a local mutual relief assessment plan association operating under R. C. S. art. 4859) for $1,000 and legal interest upon a benefit certificate provision reading: "B. In the event of the Insured becoming totally and permanently disabled because of sickness while in good standing and before having reached the age of 65 years, will be paid the full assessment of $1.00 for each member in good standing at the time of such total disability, not to exceed $1,000.00."

The appeal is from a judgment in favor of appellee for $1,105 upon a special issue verdict finding that on January 1, 1931, appellee was (1) totally and (2) permanently disabled because of sickness.

Appellant's seven assignments of error present the following contentions:

(1) The provision sued upon was not a part of the contract of insurance, since it was printed on the back and not specifically referred to in the face of the certificate.

(2) The court erroneously refused a special issue calling for a jury finding as to the number of members of the association holding certificates containing provision B.

(3) Appellant was in no event liable for interest.

(4) Testimony of one of appellee's physicians that in his opinion appellee was totally disabled was erroneously admitted.

■ Upon the first contention:

The face of the certificate contained the following provisions:

"2nd. That said R. V. Muse agrees to pay assessments levied by the Directors of this Association of $1.00 upon the death of any member within fifteen days of the date of call for same, and assessments for any accidents or other provisions described elsewhere in this Certificate, and $2.00 annually for expenses, $1.00 to be paid by May 1st and Nov. 1st each year, and agrees further that failure to pay any assessment so levied within 15 days from date of call, or to pay said semi-annual dues on or before May 1 and Nov. 1, each year, shall forfeit all claims as a member of this Association, such call to be made as provided by the By-Laws of this Association.

"3rd. That the said R. V. Muse agrees to the stipulations herein that this Certificate shall only bind this Association to pay to Helen V. Muse the sum of $1.00 for each member in good standing at the time of his death, said amount not to exceed One Thousand Dollars should he die in good standing in this Association. And it is agreed by and between the insured and all other members of this Association that the liability of each policy holder shall be limited to the payment of one assessment of $1.00 on the death of each member in good standing and for other provisions of this Certificate. This Certificate is issued subject to the Constitution and By-Laws of this Association."

Printed upon the back of the certificate under the heading "Provisions for Accidents, etc.," were seven provisions, lettered A to G, inclusive. Other than B, above quoted, and F, which related to members reaching 70 years who had joined between the ages of 15 and 55 years, the remaining five provisions covered various accidental injuries insured against in varying amounts and providing for various assessments. Other than as to provision B, as noted below, the testimony of appellant's secretary was to the effect that appellant uniformly made and collected assessments and paid losses under all of these provisions.

The language in provision "2nd," in the face of the certificate, "and assessments for any accidents or other provisions described elsewhere in this Certificate," could have no reference to anything in the face of the certificate. It could only refer to "Provisions for Accidents, etc.," printed on the back of the certificate.

Appellant contends that the "3rd" provision quoted above excludes liability. under the provisions on the back of the certificate in that it expressly provides that the "certificate shall only bind this Association to pay Helen V. Muse the sum of $1.00 for each member in good standing at the time of his death," etc., and "that the liability of each policy holder shall be limited to the payment of one assessment of $1.00 on the death of each member in good standing *and for other provisions of this certificate.*" (Italics ours.) This entire provision manifestly relates only to the contingency of death of the insured. This construction would be given the provision even were the italicized language omitted; which language, however, would be meaningless under the urged construction. To admit the latter would give sanction to repudiation on appellant's part of its express obligation, in the face of its own uniform interpretation thereof to the contrary, under which it had repeatedly, and whenever occasion arose, exercised the right of assessment conferred thereunder upon it, thus giving countenance to the perpetration of a palpable fraud by appellant upon its certificate holders.

■ A complete answer to the second contention is that by stipulation of the parties in open court, it was agreed "that the undisputed proof in this. case shows that there were only 350 members in Group Number One of the Coleman Mutual Aid Association on the first day of January, 1931, who held policies containing Paragraph 'B' as printed on the back of the policy sued on in this case." There was therefore no issuable fact for jury ascertainment on this point; consequently, error cannot be predicated upon the trial court's failure to submit the issue.

■ There is no assignment of error attacking the sufficiency of the evidence to support the judgment in this regard; absent which this court is without jurisdiction to review the question, since the error, if such it be, is not fundamental. Roberson **v.** Hughes (Tex. Com. App.) 231 S. W. 734.

It may not be amiss, however, to briefly outline the evidence upon which the trial court manifestly predicated its judgment.

As shown by its report to the insurance department, appellant had in force on January 1, 1931 (the date appellee's rights in issue accrued), three classes of certificates. In class 1 (to which appellee belonged) there were 1,713 members, from assessments against whom a reserve of $3,783 had accumulated. From the testimony of appellant's secretary, who also acted as its general manager, it appears that the certificate in suit was upon the only form in use by the association for class 1 members up to October 5, 1926. From then until January 1, 1931, while the same printed form was still used at least for quite awhile, provision B was uniformly stricken out and various other eliminations were made as regards the accident provisions; so that while no new certificates included provision B, there were a variety of certificates in class 1 as regards the accident provisions. It was the uniform practice of appellant to levy and collect assessments from all class 1 members upon all accident claims regardless of whether the particular provision was included in all certificates in that class. While the secretary's testimony is somewhat obscure as regards provision B, we interpret it to the effect that no previous claim had arisen thereunder.

■ We incline to the view that the trial court correctly interpreted provision B. Its express obligation to pay "the full assessment of $1.00 for each member in good standing at the time of such disability, not to exceed $1,000.00" cannot, we think, be limited by implication to the number of members whose certificates carried provision B. Appellant was the author of provision B, had made its own classification of its members, and by its own interpretation of its certificate had made no distinction between members in class 1 as regards differences in their several certificate provisions. Liability arose when the claim accrued and was not made contingent as to amount or otherwise upon collection of the assessment, but only upon the number of members in good standing.

■ Appellant's fourth contention to the effect that it is not liable for interest is overruled under the authorities cited in 6 Tex. Jur., p. 516, notes 7, 8, and 9.

■■ The evidence of appellee's physician, who had examined and treated him and who testified in detail both on direct and cross-examination as to his physical condition, to the effect that he was totally disabled, was, we think, within the proper scope of expert testimony. See 19 Tex. Jur., § 37, p. 56 et seq. Probably no rule pertaining to the admissibility of expert testimony is more firmly established than that a physician may testify, not only as to his diagnosis, but also as to his prognosis of the physical condition of a patient he has examined professionally. The physical effect and probability of permanency of an existing malady, necessarily a matter of opinion, comes, we think, squarely within this rule.

The trial court's judgment is affirmed.

Affirmed.