### GEORGE W. PAGE v. JOHN B. THOMAS.

No. 6262.  Decided May 16, 1934.
(71 S. W., 2d Series, 234.)

*Wagstaff, Harwell, Wagstaff & Douthit,* of Abilene, *G. W. Dunaway,* of Midland, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that defendant in error could prove over the objection of plaintiff in error by plaintiff in error's witness, that he was carrying liability insurance at the time of the accident out of which the suit arose. Lone Star Brewing Co. v. Voith, 84 S. W., 1100; Harry Brothers v. Brady, 86 S. W., 615; Gose v. Ballard, 12 S. W. (2d) 1067; Engler v. Hatton, 12 S. W. (2d) 990.

*Haage & Stubbeman,* of Midland, for defendants in error.

The jury not having been influenced by mention of insurance, it is not reversible error that the mention of insurance crept into the trial. D. & H. Truck Line v. Lavallee, 7 S. W. (2d) 661; Burrell Co. v. Grisier, 111 Texas, 477, 240 S. W., 899; Rule 62a, (for Court of Civil Appeals), 104 Texas, 658, 149 S. W., 10; Smoot's Texas Court Rules, 273.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted in the District Court of Midland County, Texas, by Dr. John B. Thomas, against Geo. W. Page, to recover the sum of $1043.85, alleged to be the reasonable value of hospital accommodations, and surgical and medical services rendered by Dr. Thomas to Barney Hines, his wife and four children. Trial in the district court, where the case was submitted to a jury, resulted in a verdict and judgment for Dr. Thomas for $800. On appeal by Page this judgment was affirmed by the Court of Civil Appeals. 47 S. W. (2d), 894. Page brings error.

It appears that a collision occurred on a public road between a motor bus owned and operated by Geo. W. Page, and a Ford car in which Barney Hines, his wife and four children were riding. Hines and his wife and children were badly injured as a result of the collision. The driver of the motor bus carried the injured parties to a hospital owned and operated by Dr. Thomas.

On the trial Dr. Thomas, by his pleadings and evidence, contended that before any of the above accommodations or services were rendered Page had agreed to pay for same. By his pleadings and evidence Page contended that he never agreed

to pay for any such accommodations or services, but he said that he was ready and willing to pay a reasonable amount for emergency treatment. Simply stated, the trial resolved itself into an adjudication as to whether Page agreed to pay for unlimited hospital accommodations and surgical treatment, or whether his agreement only covered emergency hospital accommodations and treatment. Dr. Thomas recovered on the theory that the agreement was not limited to an emergency.

No insurance company was mentioned by the pleadings of either party. The action was purely a suit between Dr. Thomas on one side and Geo. W. Page on the other. With the issues thus pitched, Page offered in evidence the following letter:

"PAGE WAY STAGE LINES<br>
Geo. W. Page, Owner<br>
BIG SPRING, TEXAS.<br>
December 29, 1929.

"Dr. J. B. Thomas
"Midland, Texas;
"Dear Sir:

"On the 27th we authorized you to render medical aid and administer to the parties who were injured in an accident with on_ of our buses this side of Midland. We did this purely as a humanitarian act and as an emergency relief to Mr. Hines and family, but since there is no liability whatever in the accident, and since we have rendered all possible aid to these people, we respectfully ask that you do not hold us for any further expense in treating these people.

"We only gave you instructions to treat them as an emergency relief and we are not admitting any liability for the wreck, in fact we deny there was any negligence whatever on our part or the part of the driver. Therefore on receipt of this letter you are instructed to look to the parties for your charges. Thanking you for the services rendered, We are,

Yours Very Truly,<br>
H. T. Page<br>
Page Way Stage Lines."

HTP

While Dr. Thomas was on the stand as a witness in his own behalf he clearly informed the jury that Geo. W. Page was protected in some way by insurance. In this connection we here quote from a duly approved bill of exception:

"Dr. John B. Thomas, being an cross examination, testified as follows:

"Q. You did receive that letter (referring to defendant's Exhibit 'A', copied on page 7 of S. F.)?

"A. Yes. This was written the 29th, after the claim agent

arrived on the job. They wrote me the letter and after the claim agent from the insurance company arrived on the job they wrote that letter.

"MR. HARWELL: Object to that. I have him on cross examination. It is an inflammatory and voluntary statement.

"COURT: Overruled. Defendant excepts."

The letter referred to by Dr. Thomas in his testimony set out in the above bill is the letter above quoted.

Also One H. T. Page, a brother of Geo. W. Page, was called as a witness by Geo. W. Page. H. T. Page was a part owner of "Page Way Stage Lines" mentioned in the above letter. On direct examination H. T. Page testified:

"Upon investigation we found there was no liability on our part and that was the 28th, and on the 28th I wrote Thomas a letter and told him we would pay the bill up to that point and that he would have to look to the parties after that time for payment. We did that purely as a humanitarian act. It was our policy to do that in every accident until we found we were liable and, of course, we couldn't do that if we weren't."

On cross examination by counsel for Dr. Thomas the following occurred, as shown by duly approved bill of exception:

"Q. And the first time that anything was said about your liability being limited to emergency treatment and that act being a humanitaritan act was after the insurance adjuster came out here?

"OBJECT to an insurance adjuster and now request the Court to retire the jury and call it a mistrial of this case.

"COURT: Overruled. Defendant excepts.

"Q. Isn't that a fact?

"A. No, sir.

"Q. An insurance adjuster did come out here, didn't he?

"MR. HARWELL: Our objection goes to all this testimony about an insurance adjuster.

"COURT: Overruled.

"HARWELL: We again ask the court to retire the jury and call it a mistrial.

"COURT: Overruled. Defendant excepts.

"Q. He got after you fellows for assuming this liability didn't he?

"A. No, sir, he didn't get after us for not assuming more than—(interrupted)—

"Q. Didn't he at that time dictate this letter?

"A. He didn't.

"MR. HARWELL: We object to all this.

"Q. Told you what was right.

"A. He didn't. I wrote the letter myself."

■ In our opinion the above proceedings plainly present revessible error. Kuntz v. Spence (Com. App. opinion approved), 67 S. W. (2d), 254; Lone Star Brewing Co. v. Voith (Civ. App.), 84 S. W., 1100; Harry Bros. v. Brady (Civ. App.), 86 S. W., 615; Gose v. Ballard (Civ. App.), 12 S. W. (2d), 1068; Levinski v. Cooper (Civ. App.), 142 S. W., 959; Lange v. Lawrence (Civ. App.), 259 S. W., 261; Engler v. Hatton, 12 S. W. (2d), 990.

In this connection we hold that the above proceedings show that Dr. Thomas was wrongfully permitted to impart to the jury the impression that any verdict they might render against Geo. W. Page would ultimately fall on some insurance company. This has many times been held reversible error by the appellate courts of this State.

In Kuntz v. Spence, supra, this section of the Commission expressly held:

" * * * In this verdict we judicially know that juries are much more apt to return a verdict for the injured party, and for a larger amount, if they know the loss is to ultimately fall on an insurance company."

■ As we interpret its opinion, the Court of Civil Appeals holds that the statement about an insurance adjuster made by Dr. Thomas was error, but that such error was harmless because the same information properly reached the jury in the proceedings had when H. T. Page was on the stand. As we further interpret the opinion of the Court of Civil Appeals it holds that it was proper to cross examine H. T. Page about the insurance adjuster because of his interest in the case, and the peculiar circumstances surrounding the writing of the letter above quoted. We agree that the information about an insurance adjuster voluntarily imparted to the jury by Dr. Thomas was reversible error, but we do not agree to the holding that it was rendered harmless because the same information properly reached the jury while H. T. Page was on the witness stand. If interest in the case would render it proper to inform the jury about the defendant's insurance, no defendant could go on the witness stand without making it proper to show that he carried such insurance. Futhermore, such fact could not discredit him as a witness because it would lessen rather than increase his motive to testify falsely.

Finally the answers of this witness did not show or tend to show any connection between the latter and the insurance, but the questions themselves further informed the jury that

any verdict they rendered against Geo. W. Page would ultimately fall on the insurance company. Under the above record the proceedings show a clear violation of the rule against imparting information of insurance to the jury. It is true that such information came indirectly in the form of questions asked on cross examination, but the information was just as poisonous as it would have been had the policy itself been read to the jury.

Page assigns error in regard to the rulings of the Court of Civil Appeals in holding that the trial court did not commit error in refusing to sustain his plea of privilege filed in the trial court. The opinion of the Court of Civil Appeals fully states the circumstances surrounding this matter. In our opinion no error was committed in overruling the plea under the peculiar circumstances of this case.

In this connection we wish to say that we pass on this assignment because it reaches us on an appeal from a final judgment and not from an interlocutory order.

The judgment of the Court of Civil Appeals is reversed and the cause remanded to the district court for a new trial.

Opinion adopted by the Supreme Court, May 16, 1934.