## MURPHEY et al. v. BLANKENSHIP.

### No. 1806.

Court of Civil Appeals of Texas. Eastland.

Sept. 23, 1938.

Cox & Hayden, of Abilene, for appellants.

Frank C. Dickey, of Ballinger, for appellee.

LESLIE, Chief Justice.

J. L. Blankenship instituted this suit against W. L. Murphey and his mother Mrs. Sue Murphey, owners and operators of the Sunset Stages and also against B. L. Agnew. The plaintiff alleged in substance that his wife Olavine Blankenship was a passenger on said bus line about November 23, 1935, and that while traveling north on the highway between Ballinger and Abilene the bus collided with an automobile which was being driven in the opposite direction by the defendant Agnew and that the bus was overturned and the plaintiff's wife sustained physical injuries and damages, for which this suit is prosecuted.

The plaintiff alleged that the driver of the bus was guilty of negligence in many respects and that each act of negligence was a proximate cause of the collision and injury. Like allegations of negligence were made against the defendant Agnew and that the same also caused or contributed to cause the injury and damages.

The defendants W. L. Murphey and Sue Murphey denied liability to plaintiff and pleaded over against their co-defendant Agnew, charging him with the negligence resulting in the accident and proximately causing the injuries to plaintiff's wife. They asked for judgment over against the co-defendant Agnew in the event of judgment against themselves.

The defendant Agnew responded by denying the allegations of his co-defendants Murpheys and charged the negligence of the bus driver caused the accident and the resulting damages to plaintiff's wife.

The case was tried before the court and jury and submitted by the court to the jury upon special issues, and the jury's verdict in response thereto was in favor of the defendant Agnew as against the plaintiff Blankenship, and also in favor of the defendant Agnew on the issues raised by the cross-action filed against him by the Murpheys.

The verdict favored the plaintiff as against the defendants Murpheys and fixed

the amount of plaintiff's damages at $2,-610. · Judgment was rendered in favor of the plaintiff against the Murpheys for that amount. The court further rendered judgment in favor of Agnew on all the issues raised by the respective pleadings. The Murpheys have appealed from the plaintiff's judgment against them, but they do not appeal from the judgment in favor of the defendant Agnew on their cross-action against him. Neither does the plaintiff Blankenship appeal from the judgment against him in favor of Agnew. The judgment of the trial court is evidently final as to the defendant Agnew on all issues.

The appeal is presented here on sixteen assignments of error. The first two relate to the misconduct of the jury and will be considered together. The first assignment is to the effect that the court erred in overruling and not sustaining the motion to quash the jury panel and furnish another jury panel to the parties for the trial of this case after the juror Clark had stated in the presence of the jury panel, when counsel were examining said panel for the purpose of making their challenges, that he himself had had automobile collisions and that his damages were settled by the insurance companies. The bill of exception reflects the matters complained of in the following language: "* * * while the jury was being questioned by the various counsel for the parties for the purposes of challenges by the various counsel and while counsel for the defendant W. L. Murphey and Sue Murphey were interrogating the jury and before the jury was selected, and for the purpose of testing the qualifications of the jurors, said counsel inquired of the juror R. H. Clark, whether or not he had ever had any controversy which grew out of an automobile collision, and the juror answered in substance: That he had two or three wrecks over a period of years since he had been driving but that there had never been any legal proceedings in court over same, and he had been fortunate in a way, he supposed, because his damages had been settled by the insurance companies. This occurred in the hearing of the jury panel."

The second assignment of error complains that the court erred in not setting aside the judgment and verdict herein and granting a new trial for the reason that the jury in its deliberations was guilty of misconduct in that it discussed in the jury room before it arrived at its verdict the question of insurance, it being stated by a juror in the presence of the others in substance that bus companies usually carry insurance. It is conceded that the defendants Murpheys did carry insurance with the Traders & General Insurance Company of Dallas, Texas, and the matters here complained of are specifically stated in the bill of exception which contains the testimony of the jurors pertaining to the alleged misconduct. The juror Roger Williams testified in part as follows:

"Q. Now during your deliberations, at any time before the verdict was reached, did you hear any juror mention the question of the bus lines carrying insurance? A. No sir it wasn't discussed.

"Q. You heard it mentioned didn't you? A. There was one of them said that the bus lines ordinarily carry insurance, and that was all that was ever said, but there wasn't any round table discussion. There wasn't anything about it mentioned at all.

"Q. But yer heard that? A. I heard that.

"* * * A. That was Saturday evening. * * *

"Q. You mean by discussion that a certain point would be laid before the jury and then everybody would discuss it around the table, that is what you mean by discussion? A. Yes.

"Q. When you say it wasn't discussed that is what you are talking about? A. Yes sir. * * *

"Q. Did anybody suggest that insurance companies ordinarily paid $1600 or $1750, or other amounts, for injuries to certain things? A. No they didn't. Not in one sense of the word they didn't.

"Q. Just tell what you heard there in any sense. A. I believe Mr. Varnell said this: If they put it too high they wouldn't pay at all.

"* * * A. He didn't say who he meant by 'they.'"

The juror L. M. Guy testified in part as follows:

"Q. Did you hear any juror say in his deliberations that the bus companies usually carried insurance on these accidents? A. No, not expressed that way, no.

"Q. Well, in anyway? A. They expressed that usually all buses or all companies would naturally carry a little insurance for their own protection, but there

was nothing discussed to show that these people did carry insurance at all.

"Q. The discussion you heard was that usually they did have it, or all of them have it? A. There was something said about that but not a round table discussion at all. * * *

"Q. You had that in mind and so far as you know the other jurors had that in mind, that all bus companies were covered by insurance? A. Yes sir."

The juror J. Z. Price testified at the hearing on motion for new trial, in part, as follows:

"Q. Was there a discussion when you got down to the amount of the verdict as to how much the insurance company would pay? A. How much the defendants should draw?

"Q. Yes. A. Well, the only discussion I heard—it wasn't about any insurance or any bus company or anything. One of the men said that he got, I believe, a piece of steel in his eye once, and that the insurance company—they carried insurance I guess on the men of the company he worked for,—and he said that he got $15 a month for losing one eye. So Mr. Varnell—he was foreman of the jury—told them that didn't pertain to this case and they wouldn't discuss anything like that."

■ We have given careful consideration to the propositions above set out. We are inclined to the view that the matters complained of in the first one, standing alone, would not require a reversal of the judgment of the trial court. Such is not the nature of the matters complained of in the second proposition raising the question of the misconduct of the jurors in their deliberations on their verdict. The testimony establishes without doubt that during their deliberations on their verdict some juror stated that bus lines, of which the Sunset Stages owned and operated by the Murpheys is one, ordinarily carry insurance. That such mention was made on Saturday evening during the discussion of the amount of damages to be awarded. That the proposition of insurance was mentioned during such deliberations of the jury is freely confessed but the evidence discloses a reluctance upon the part of the jurors to state freely the extent to which it was mentioned. By their testimony they would limit what was said to the "mentioning" of such insurance rather than a "discussion" of insurance. More specifically, their testimony, in substance, reflects that the "discussion", or whatever it was, was to the effect that bus companies "would naturally carry a little insurance for their own protection", and that "usually they (bus companies) did have it or all of them have it."

Being questioned upon this phase of the motion for a new trial the juror Guy was asked: "Q. You had that in mind, and so far as you know, the other jurors had that in mind, that all bus companies were covered by insurance? A. Yes sir."

Taking the above testimony as a whole, and especially that particularly referred to, we reach the conclusion that misconduct calculated to prejudice the rights of the appellants was shown and that it must result in a reversal of the judgment.

■ As stated by Judge Hickman for the Supreme Court in Texas & P. Ry. Co. v. Gillette, 125 Tex. 563, 83 S.W.2d 307, 309: "The rule is definitely established by this court that, where misconduct by the jury in reaching a verdict is shown, a reversal will follow, unless the record negatives, beyond a reasonable doubt, that such misconduct influenced any juror in giving assent to the verdict."

■ It is also stated in that opinion dealing with a different type of misconduct: "If one juror probably agreed to the amount of the damages by reason of this private discussion, the verdict should not be permitted to stand, even though the other jurors knew nothing of it and were not, therefore, influenced thereby."

■ The rule requiring reversal where jury misconduct of a prejudicial nature occurs is again stated in Texas Co. v. Betterton, 126 Tex. 359, 88 S.W.2d 1039, 1040, in this language: "We here reaffirm the holding of this court in Page v. Thomas, 123 Tex. 368, 71 S.W.2d 234, that it is error to bring to the jury the *information* or *impression* that the defendant carries liability insurance." (Italics ours.)

■ These jury misconduct cases are all dissimilar in many respects, and while we have not been able to find any fact cases on all-fours with the instant case, and none have been cited, we are convinced that the principles applied in the following recent opinions, as well as the spirit of our decisions generally, necessarily condemn the acts herein complained of as material misconduct on the part of the jury. In support of these conclusions we cite the fol-

lowing authorities: Page v. Thomas, 123 Tex. 368, 71 S.W.2d 234; Id., Tex.Civ. App., 47 S.W.2d 894; Kuntz v. Spence et al., Tex.Com.App., 67 S.W.2d 254, 256; Finck Cigar Co. v. Campbell, Tex.Civ.App., 114 S.W.2d 348, error granted by Supreme Court April 6, 1938 on proposition in substance the same as that here under consideration; Texas & P. Ry. Co. v. Gillette, 125 Tex. 563, 83 S.W.2d 307; Texas Co. v. Betterton, 126 Tex. 359, 88 S.W.2d 1039; The Fair, Inc., v. Preisach et al., Tex.Civ. App., 77 S.W.2d 725; Continental Oil Co. v. Barnes, Tex.Civ.App., 97 S.W.2d 494; South Plains Coaches v. Box, Tex.Civ.App., 111 S.W.2d 1151; Thompson Drug Co. v. Latham, Tex.Civ.App., 19 S.W.2d 825.

As stated, we would not be inclined to reverse the judgment of the trial court on the first proposition, but in view of what occurred thereafter, it undoubtedly had the effect to create in the minds of the jurors the impression that the appellants were protected by indemnity insurance. It was reasonably calculated to produce some such effect. To aggravate the situation thus created it appears from the testimony of the juror Price that another juror stated in the presence of the jury and during its deliberations that he himself at one time sustained an injury and received therefor from an insurance company $15 per month compensation. True the foreman promptly restrained the discussion of such fact and this circumstance alone would probably not warrant a reversal of the judgment, yet, like the one above discussed, it tended to keep the idea of indemnity insurance constantly before the jury. The precise effect of all this on the verdict cannot be determined. Obviously the views of the jury shifted in the matter of the amount to be awarded and there is possibility that the ultimate shift was adverse to the appellants. At least two jurors raised from $2,000 to $2,610. There is no significance in these circumstances except as they tend to establish or corroborate the occurrence of misconduct on the part of the jury. Neither is there anything to negative its influence on the jury, certainly nothing to produce that result beyond a reasonable doubt which would be necessary under the authorities.

Assignments of error three to eleven, inclusive, present questions of improper argument upon the part of the attorneys representing the plaintiff and the co-defendant Agnew. Since the judgment is to be re-versed and the case remanded for another trial for the reasons hereinbefore discussed, and since the arguments of said attorneys will doubtless not be repeated on another trial, the merits of those assignments will not be determined upon this appeal.

In response to the twelfth assignment we hold it was not error to permit Dr. Cash to testify in substance that the plaintiff's wife was unable to perform the duties of a house wife. His testimony on the witness stand clearly reflected his qualification to express his opinion or give the testimony. The testimony was warranted under the authority of Zurich General Acc. & Liability Ins. Co., Ltd., v. Kerr, Tex.Civ.App., 54 S.W.2d 349; Metropolitan Life Ins. Co. v. Greene, Tex. Civ.App., 93 S.W.2d 1241; Brotherhood of Locomotive Firemen and Enginemen v. Raney, Tex.Civ.App., 101 S.W.2d 863; Coleman Mut. Aid Ass'n v. Muse, Tex. Civ.App., 67 S.W.2d 393.

We overrule the thirteenth assignment complaining that the plaintiff failed to qualify himself to express an opinion upon the value of his wife's household services. Under the record and the following authorities it was permissible for him to testify upon that point: McDaniel Bros. v. Wilson, Tex.Civ.App., 70 S.W. 2d 618, writ refused; St. Louis Southwestern Ry. Co. v. Horne, Tex.Civ.App., 130 S.W. 1025, affirmed 105 Tex. 135, 145 S.W. 1186; Chicago, R. I. & T. Ry. Co. v. Armes, 32 Tex.Civ.App. 32, 74 S. W. 77, writ refused. In the last authority it is said [page 80]: "We think that the opinion of the husband as to the value of his wife's services, to which objection is made in the first assignment, was admissible, together with the facts stated by him and others to the effect that she had been able to perform all of the ordinary duties of the household and family prior to the injury, but not thereafter."

It was unnecessary for the court in the submission of the special issues to define "concurring negligence", "concurring cause" or "intervening cause". Neither of these terms was used in said issues, and it was therefore unnecessary for the court to define them. The respective assignments 14, 15 and 16 raising these questions are overruled.

For the reasons assigned the judgment of the trial court insofar as it is in favor of B. L. Agnew and against the Murpheys and the plaintiff Blankenship is affirmed,

but the judgment of the trial court in favor of Blankenship and against the Murpheys is reversed and the cause remanded for another trial.