## ALLMON v. TEXAS ELECTRIC SERVICE CO.

### No. 4770.

Court of Civil Appeals of Texas. El Paso.
Jan. 17, 1951.

Rehearing Denied Feb. 14, 1951.

Second Rehearing Denied March 14, 1951.

Warren Burnett, William D. Kimbrough, Martelle McDonald, John J. Watts, all of Odessa, for appellant.

Stowe & Harman, Odessa, Whitaker, Turpin, Kerr, Smith & Brooks, Midland, for appellee.

PRICE, Chief Justice.

This is an appeal from the District Court of Ector County by Charles B. Allmon

from an adverse judgment in an action in which he sought to recover damages for personal injuries from the defendant Texas Electric Service Company. The parties will be here designated as they were in the trial court.

Plaintiff, when he received the injuries sued for, was an employee of O. H. McAllister. He was a swamper on a truck operated by another employee of said McAllister. They were engaged in the course of their employment in moving what is known as a 500 tank on a trailer attached to a truck along Grant Street in the city of Odessa. The wires of defendant crossed said street. The tank on the trailer was higher than the wires. The plaintiff was engaged in lifting the wires over the tank and in some way he was severely shocked and burned by an electric current. In raising the wires above the tank he used a short wooden stick or board.

The case was tried before the court with a jury, submission on special issues. All special issues submitted were answered in favor of defendant. Plaintiff here urges three points of error: First: The trial court erred in denying plaintiff's motion for a new trial wherein plaintiff complained of the introduction in evidence by defendant of the issue of insurance. Second: The court erred in denying plaintiff's motion for mistrial, complaining of the improper arguments of counsel for appellee wherein he twice in the presence of the jury made reference to appellant's compensation carrier. Third: That it was error to overrule appellant's motion for a new trial complaining of the prejudice of a juryman such as would and did deny appellant a fair and impartial trial.

The statement under point No. 1 shows that while witness Mullins, a witness for the defendant, was on the stand he was cross-examined by plaintiff with reference to a written statement made by the witness. On re-direct examination he was asked by counsel for the defendant "To whom was that statement made?" He answered: "To some fellow with the insurance company." He then stated it was not made to the electric company. The question did not necessarily call for the response. The statement in question was produced by counsel for the plaintiff. There is no showing that counsel for defendant knew of the existence of this statement prior to the testimony of the witness. The statement does not disclose to whom it was made. For aught that appears from the bill of exceptions it may have been to the insurer of the defendant. Plaintiff's witness Floyd O. Tankersley, a former employee of O. H. McAllister, in response to a question by Mr. Watts, attorney for plaintiff, stated that he was not suing O. H. McAllister but he was suing for compensation insurance in the amount of $10,000. On cross-examination he testified without objection that O. H. McAllister was his last employer; he had some kind of claim pending against Mr. McAllister or the insurance company. Numerous cases sustain the proposition that it is improper to inject the question of insurance into the trial of a damage suit. Page v. Thomas, 123 Tex. 368, 71 S.W.2d 234; Myers v. Thomas, 143 Tex. 502, 186 S.W.2d 811; 33 Tex.Jur. 220, 221. However, it is not every reference to insurance that will necessitate a reversal. A mere inadvertent or casual reference thereto is not reversible error. Finck Cigar Co. v. Campbell, 134 Tex. 250, 133 S.W. 2d 759; Texas Textile Mills v. Gregory, 142 Tex. 308, 177 S.W.2d 938; Jimmie Guest Motor Co. v. Olcott, Tex.Civ.App. 26 S.W.2d 373. Plaintiff elected to stand on his motion to declare mistrial; he did not request the court to charge the jury to disregard the statement of the witness. No objection was made to the statement of the witness at the time same was made. Plaintiff's position here is that he was "hurt past all surgery". In most cases the defendant urges the error as to injection of the question of insurance in the case, the prejudicial matter being that if a verdict be rendered against the defendant, defendant will not have to pay same. Bransford v. Pageway Coaches, 129 Tex. 327, 104 S.W.2d 471. In the instant case plaintiff seeks to maintain that the prejudice lies in the fact that plaintiff had been or would be compensated for his damages by a party other than defendant. The cases as to defend-

ant and plaintiff are not exactly parallel. In case of insurance in favor of defendant, defendant pays for same. In case of insurance in favor of a plaintiff the defendant does not pay for that insurance—the legitimate inference is either that the plaintiff pays therefor or some party other than the defendant. The general provisions of Workmen's Cmpensation Law we think are known to the average juror. In our opinion the assignment does not disclose reversible error. There is no showing that there was any discussion of insurance in the course of the deliberations of the jury. However, in the case of Myers v. Thomas, 143 Tex. 502, 186 S.W.2d 811, a reversal was decreed where the evidence was as to the payment of insurance to plaintiff. In our opinion, standing alone, the assignment does not constitute reversible error.

In regard to the assignment complaining of the argument of defendant's counsel, Wm. Kerr, in his closing argument for the defendant stated: "This is not a suit to determine how much the telephone company is indebted to Mr. Allmon, it is not a suit to determine how much O. H. McAllister Trucking Company or his compensation carrier is indebted to him," to which the plaintiff objected and the court sustained the objection, whereupon said counsel turned to the court but in the presence and hearing of the jury stated: "You will recall that Tankersley said he got hurt working for McAllister Trucking Company due to no one's negligence, and that he had a suit against McAllister's compensation carrier." The court then sustained the objection of plaintiff and instructed the jury not to consider the argument, and plaintiff's counsel moved the court to declare a mistrial and excepted to the action of the court in overruling the motion for mistrial. In considering this point of error it must be borne in mind that in a measure this was a suit by the insurance carrier of O. H. McAllister to recover the amount paid by such insurance carrier to plaintiff Allmon. The intervention of the insurance carrier was not read to the jury, that this was the nature of the suit was not disclosed to the jury unless by the argument complained of

on the part of plaintiff. In making this argument counsel for defendant must have deemed it of some advantage to his client to disclose the nature of the action. Information was not given to the jury that Allmon was not suing entirely for his own benefit. Sometimes a situation may be disclosed by describing what it was not, in fact the action as stated by counsel in the argument was not against O. H. McAllister, not against the insurance carrier of O. H. McAllister, in fact it was an action for the benefit of the insurance carrier of O. H. McAllister.

The argument is further capable of the construction that O. H. McAllister carried compensation insurance which protected plaintiff. This was further emphasized by defendant's counsel in his statement made to the court in the presence of the jury at the time the court sustained the objection to the argument. Tankersley was an employee of O. H. McAllister; Tankersley had a suit against the insurance carrier of McAllister; the inference was if Tankersley was covered by compensation insurance so was the plantiff. Carried a little further, if plaintiff was covered by compensation insurance he had been or would be compensated in a measure at least for his personal injuries resulting from the accident complained of, further that he might be entitled to compensation even though he were negligent.

The point of error urging this argument as reversible error is sustained. In support thereof see Myers v. Thomas, 143 Tex. 502, 186 S.W.2d 811; Vol. 2, Baylor Law Review, p. 462, and cases cited and discussed. If, as held in the case of Myers v. Thomas, supra, it was reversible error to deny the motion of the intervenor to keep from the jury facts relating to compensation benefits paid, here it was reversible error for the attorney for defendant to state to the jury facts from which it might be inferred that plaintiff had been or would be paid for his injuries. The defendant asserts if the argument complained of was error it was harmless error, harmless because the court should have sustained its motion to instruct a verdict in its favor. After a careful pe-

rusal of the evidence we are convinced that there were issues to go to the jury in this case.

The last point of error is in substance that without fault on his part plaintiff was denied a trial by a fair and impartial jury. This assignment is sought to be sustained by a statement alleged to have been made by a member of the jury to a person not on the jury and not in the presence of any of the other jurors. It is shown by plaintiff's Bill of Exception No. 4 that plaintiff claimed that after the case had been submitted to the jury and before the verdict in the case was returned, one of the jurors stated outside of the jury room to an outsider that it appeared to said juror that plaintiff was partly to blame and the electric company was partly at fault, and that he wouldn't mind giving the plaintiff a judgment if it were not for the damned lawyers—they would get all the money anyhow. It is shown that plaintiff claimed in his motion for a new trial that the remark of said juror showed prejudice towards the plaintiff's lawyer conflicting with the answer of the juror on voir dire examination that there was nothing which would prevent him from trying the case impartially. The bill of exceptions attempts by reference to the statement of facts on the motion for new trial to incorporate same therein. The point makes reference to bill of exceptions No. 3; as a matter of fact it is bill of exceptions No. 4. The bill of exceptions No. 4 attempts to incorporate the evidence taken on the motion for a new trial. No reference is made as to where in the statement of facts such evidence is to be found. The brief of defendant was filed before that of plaintiff. A reference to the statement of facts discloses that one Charles Van Green testified that on Saturday afternoon before the jury returned the verdict on Monday night in the case: "I was out at the Country Club at Odessa, getting ready to play golf * * * I was standing in the door of the Pro shop at the Country Club. A gentleman was standing in the door of the Pro. He had been carrying a little canvas bag and wanted a big bag. * * * I was standing in the doorway and overheard a conversation between that party and another party, I don't remember who, at the Country Club. The conversation was like this: The man asked him if he was going to play golf this afternoon and he said he had to be in court at 2 o'clock. He said 'You mean they are going to have court this afternoon?' and he said they were. I guess he knew what case it was. He said: 'How is the case coming out?' and he said, 'I tell you, maybe it looks like both parties were at fault. Maybe the man was at fault or the electric company was at fault. We haven't heard all of the testimony yet, but, frankly, I would like to see the man get something as he is disabled for life and, personally, I would like to see him get something, but if we would award him anything, the damn lawyers would get it all anyway'."

The witness subsequently identified Gus Corey as the man making the statement, and said Corey was a member of the jury. Gus Corey testified on behalf of the defendant that he was out at the Country Club on the evening in question. He remembered saying to Mr. Trott: "I don't know what we are going to give him, have no idea." He didn't know whether he said to Mr. Trott something about being willing to give the plaintiff something but the "damn lawyers" would get it all, or words to that effect. He didn't know whether he said "damn lawyers" or not, but if he did he was "popping off" and didn't mean it the way it sounded, but "I might have said they would get it all, I don't know, I won't commit myself there. It was merely a popping off statement." The juror in question was certainly guilty of grave and serious misconduct in discussing the case at all. So far as the evidence goes there is nothing to show that he discussed his opinions and prejudices in the jury room. He does not deny making the statement that he wouldn't mind giving the plaintiff something but the damn lawyers would get it all. He does deny that he had any such true opinion or prejudice. He said he was merely "popping off." Just what he meant by "popping off" is hard to comprehend. However, we take it that he meant that what he said didn't reflect his feelings and sentiments.

The Bill of Rights guarantees trial by jury, Section 15, Art. 1, Vernon's Ann. St.Const.: "The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency." In compliance with this mandate of the Constitution the Legislature has enacted Articles 2133 and 2134, Revised Civil Statutes. Art. 2133 provides as to qualifications of juries; Art. 2134 as to disqualification. Section 4 thereof is as follows: "Any person who has a bias or prejudice in favor of or against either of the parties" is disqualified as a juror. In our opinion it is elementary and fundamental that the verdict being adverse the presence of a biased or prejudiced juror on the jury requires the granting of a new trial. The case of Rhoades v. El Paso & Southwestern Ry. Co., Tex.Com.App., 248 S.W. 1064, 27 A.L.R. 1048, the opinion having the express approval of the Supreme Court, is the case most strongly relied upon by the plaintiff herein. In that case the fact of the jury's prejudice was impliedly held to be established as a matter of law. In considering the instant case, however, it must be borne in mind that the question posed to the trial judge and posed here was not as to whether or not the statement had been made. The Statement of Facts taken on the hearing of the motion for a new trial leaves no question but that the juror made the statement. The true question was, was the juror prejudiced? The juror denied that such statement truly reflected his feelings or sentiments. Before he was taken on the jury he had stated under oath that he was free from bias and prejudice. His statement at the Country Club was evidence of a disqualifying bias or prejudice. Under oath at the hearing of the motion for a new trial he disclaimed the existence of any such bias or prejudice.

There must, we think, be a finding attributed to the trial judge in overruling the motion for a new trial that the juror was fair and impartial. If the juror involved did have bias and prejudice as indicated by his remark at the Country Club, the evidence taken at the hearing of the motion for a new trial fails to show that he urged it on the other jurors. It may be that the trial court found that this was a thoughtless, careless statement on the part of the juror, that did not represent his real feelings or prejudices. The juror frankly confessed this and we think a fair construction of his testimony is the denial of the truthfulness of his own statement. In regard to this conversation the gentleman to whom the juror Corey talked did not recollect the conversation. Juror Corey testified:

"Q. Did you say anything to Mr. Trott or in his presence about you would be willing to give the plaintiff something but the damn lawyers would get it all or words to that effect? A. Well, I don't now whether I said 'damn lawyers' or not.

"Q. You were probably thinking that? A. Yes, but if I did I was popping off, as I didn't mean it the way it sounds, but I may have said they would get it all. I don't know, I won't commit myself there."

He testified "Whatever I said was a 'popping off' statement." The point at issue was the existence of bias or prejudice in the heart and mind of the juror. In our opinion the finding of the trial judge that disqualifying bias or prejudice did not exist is binding here. The point of error is overruled.

For the error indicated it is ordered the case be reversed and remanded for a new trial.

### On Appellee's Motion for Rehearing.

Careful and painstaking consideration has been given to the motion of appellee. We still adhere to our views expressed in the original opinion. There was no direct evidence that plaintiff was covered by compensation insurance. This argument, in effect, informed the jury of such fact. This placed plaintiff (appellant) in the position of seeking to recover double damages, to recover for his own benefit what the compensation carrier had or would pay him, and to likewise recover from the appellee. Counsel's voluntary statement and argument, unsupported by evidence, had the effect of placing plaintiff in a false light before the jury. The argument conveyed the fact to the jury that

plaintiff was protected by compensation insurance. From the fact that Tankersley, another employee, was suing the compensation carrier of appellant it possibly might have been inferred that the appellee had compensation insurance which protected appellant. If so, this was fortified by the voluntary and intentional statement of appellee's counsel. The statement either meant one of two things—that appellant had compensation insurance, or that he was covered by compensation insurance of O. H. McAllister Trucking Company. We think the record fails to show that appellant was not harmed by this improper argument. Chapin v. Putnam Supply Co., 124 Tex. 247, 76 S.W.2d 469.

It is ordered that the motion for rehearing be in all things overruled.

### On Appellee's Second Motion for Rehearing.

We have given careful consideration to the second motion for rehearing made by the appellee, but still adhere to the views expressed in the original opinion and those expressed in overruling the original motion for rehearing, and the second motion is hereby overruled.

In its second motion for rehearing appellee complains that we erred in holding that the tank on which plaintiff was riding was higher than the wires of the Texas Electric Service Company, further that we erred in holding plaintiff was lifting electric wires over the top of the tank at the time of the injury. The statement in the original opinion complained of is as follows: "The wires of defendant crossed said street. The tank on the trailer was higher than the wires. The plaintiff was engaged in lifting the wires over the tank and in some way he was severely shocked and burned by an electric current." Unquestionably there were telephone wires crossing the street at this point. Under the evidence we think it was an issue of fact as to whether at the time he was lifting telephone wires, or the power wires of the defendant, and as to whether the wires of defendant sagged below those of the telephone company. The matter is not deemed of controlling importance, but in

view of the defendant's complaint we make this explanation.

Further, as to the statement made by the juror Corey, that same was made after the case had been submitted to the jury, we modify the same so as to show that the statement was made during the time the case was on trial before the jury.