Artice SPRINGER, Administratrix of the Estate of Frank S. Springer, Sr., Deceased, Appellant,

v.

Carl BAGGS, Appellee.

No. 8150.

Court of Civil Appeals of Texas, Texarkana.

Sept. 4, 1973.

Rehearing Denied Oct. 2, 1973.

Victor Hlavinka, Atchley, Russell, Waldrop & Hlavinka, Texarkana, for appellant.

Cahill Hitt, Hitt & Pesek, Texarkana, for appellee.

CORNELIUS, Justice.

This was a suit for personal injuries brought by Carl Baggs against Artice Springer, Administratrix of the Estate of Frank S. Springer, deceased. The injuries

were received by Baggs in a collision between a car driven by Frank Springer and a truck and trailer driven by Baggs. The collision occurred at the intersection of U. S. Highway 271 and Texas State Highway 37 in Bowie County, Texas. Mr. Springer was killed in the collision. Trial was to a jury, which found negligence on the part of Mr. Springer and damages to Mr. Baggs in sums totaling $27,000.00. Judgment was awarded on the jury verdict and the estate of Frank Springer, deceased, has appealed. The parties will be referred to here as in the trial court.

Defendant assigns two points of error. Point No. 1 asserts that the trial court erred in refusing to grant a mistrial after plaintiff's counsel impliedly informed the jury that the defendant was protected by insurance. Point No. 2 urges that the jury finding that plaintiff suffered a loss of earning capacity amounting to $16,000.00 is against the great weight and preponderance of the evidence and is manifestly wrong.

The basis of Point No. 1 is that counsel for plaintiff emphasized to the jury that, as instructed by the trial court, they should not discuss, speculate or consider whether any party was protected by insurance. It is contended that this emphasis, when followed by the additional comment by plaintiff's counsel that the jury should also not consider whether a judgment in the amount sought by the plaintiff would be embarrassing to the defendant, constituted an indirect appeal to the jury to do the very thing they were literally asked not to do—that is, assume that the defendant was protected by insurance and therefore would not be required to pay any judgment.

■ It is not every reference to insurance which constitutes error in a civil suit for personal injuries. Allmon v. Texas Electric Service Co., 242 S.W.2d 806 (Tex.Civ.App. El Paso 1951, ref'd, n. r. e.). But references to insurance which, when reasonably construed, tend to imply to the jury that the defendant is protected by insurance and will not be required to pay any judgment which may be rendered,

are improper. Moncada v. Snyder, 137 Tex. 112, 152 S.W.2d 1077 (1941); Page v. Thomas, 123 Tex. 368, 71 S.W.2d 234 (1934, op. app.).

■ This appeal raises a unique question—that is, can a party commit error simply by reiterating or emphasizing an instruction which the trial court itself has properly given to the jury? So far as we can determine, the exact question, as applied to facts such as are present in this case, has not been decided in Texas. We can conceive of a case where the facts would be so strong as to make such conduct error, as where there is inordinate repetition and emphasis of the instruction with accompanying sarcasm or satire, either in words or actions, making it clear to any reasonable hearer that the effect desired by the speaker was in reality the opposite of that urged by the mere words themselves. We do not believe, however, that such is the case here. Although the defendant stresses the action of plaintiff's counsel in reminding the jury of the court's instruction concerning insurance, and by following that immediately with a request that the jury not consider whether a money judgment in the amount sought by plaintiff would embarrass the defendant, these were not all the points or instructions emphasized by plaintiff's counsel. The following are excerpts of the summation which we deem pertinent here:

". . . He (Court) tells you second paragraph, do not let bias, prejudice or sympathy play any part in your deliberations. I talked with you about this on voir dire at the very beginning because it's one of the things that concerns me most in this case . . .

". . . On the other hand, if you should find that he (mr. Springer) didn't keep a proper lookout and that's what caused the accident because you feel sorry for the widow of Mr. Springer, or because you have a feeling of . . . afraid that any money damages you might award in this case might be embarrassing to the Estate of Frank S.

Springer, then you might be giving a right verdict but for the totally wrong reason.

". . . The Judge tells you in this Charge that each issue that is submitted is important, and each issue should be answered. He tells you further that you are not to be concerned with the effect of your answers and that you should not go to the jury room and say who should win and who should lose.

\*      \*      \*      \*      \*      \*

". . . You were given a little pamphlet at the first of this case, and it has some things in here, too, I'd like to go over with you . . . . it states in here on the last page, you will not be asked and you should not consider whether one party or the other should win . . . It also says over here that you have just taken an oath that you will render a verdict on the evidence submitted to you under my ruling, which is what I said to you earlier . . .

"Number 9 says, 'Do not discuss or speculate whether any party in this case is covered by insurance,' and I pray you do not discuss, do not speculate, or do not consider whether any party in this action is protected by insurance. This is not a relevant point for the Jury to consider when they do justice.

"By the same token, do not discuss, consider, or let come into your mind whether or not a money verdict in the sum we're asking, forty-seven thousand dollars, would be embarrassing to the Defendant because of the sum of money, because that also is not a proper piece of matter for you to discuss as a Jury. Whether or not it is too much money for the Estate of Frank S. Springer to pay is immaterial. . . . . take the facts, find the answers to the issues based on the evidence and return your verdict, and when you do so, you will have done your duty as an officer of this Court and as a Juror and you will have done justice."

We do not believe this argument, considered as a whole, can fairly be said to have necessarily been calculated to cause the jury to consider that the defendant was protected by insurance, or that it reasonably had that effect. To hold otherwise on the facts here would be to hold, in effect, that little more than the mere reading of one of the court's admonitory instructions would be improper. If it is proper for the court to so instruct the jury, it can hardly be said to be error for the parties to read the instruction and urge that the jury follow it, when there is no additional comment or action by the party tending to subvert the court's charge. By way of analogy, we note that our courts have held in criminal cases that, on as sensitive a matter as the right of the accused to remain silent, it is not error for the prosecuting attorney to read to the jury the court's instruction concerning that right and urge the jury to obey that instruction, unless there are other acts or comments indicating to the jury that counsel actually is subtly urging them to disobey the instruction. Reese v. State, 142 Tex.Cr.R. 254 151 S. W.2d 828 (1941); Meadow v. State, 119 Tex.Cr.R. 624, 42 S.W.2d 785 (1931); Boyd v. State, 114 Tex.Cr.R. 160, 21 S. W.2d 733 (1929).

Plaintiff's counsel could have had a legitimate concern that the jury not consider insurance coverage. For example, the jury might have speculated that the plaintiff himself had recovered, or could recover, a part of his damages from some insurance coverage he had, and thus might have refused to compensate him adequately in this suit. Also, a discussion by the jury of the defendant's possible insurance coverage would be jury misconduct which would endanger any judgment plaintiff might recover. We cannot assume that counsel's action in this respect was calculated to cause injury unless the words and conduct admit of no other reasonable construction.

As concerns the urging of plaintiff's counsel that the jury not consider whether a money judgment in the sum sought by

plaintiff would embarrass the defendant, this appears to be a legitimate admonition to the jury not to let bias, prejudice or sympathy dictate their answers, or to consider the effect of their answers. This also was simply a reiteration of what the court had in effect already instructed the jury, and we cannot say its effect was to advise the jury that the defendant would not have to pay any judgment which might be rendered.

The cases cited by defendant under this point, being Griffith v. Casteel, 313 S.W.2d 149 (Tex.Civ.App. Houston 1958, ref'd, n. r. e.) and Hurley v. McMillan, 268 S.W.2d 229 (Tex.Civ.App. Galveston 1954, ref'd n. r. e.) are distinguished on the facts. In *Griffith,* counsel told the jury that, ". . . . the Defendant is not being asked to pay any money." In *Hurley,* counsel told the jury that he didn't think that the defendant cared what the jury answered on the issue of damages. Thus, in both these cases the jury was being told, in effect, that the defendant would not have to pay any judgment rendered. We do not believe the argument here can be said to have had that effect. Defendant also cites the Pennsylvania case of Trimble v. Merloe, 413 Pa. 408, 197 A.2d 457 (1964) but in that case it appears that counsel was not referring to instructions given the jury by the trial court, but that as the appellate court found, counsel there ". . . . made a conscious and deliberate effort to build his case and verdict by seeking to distract the jury from the real issues and to induce a substantial verdict by inferences, allusions and insinuations by his insurance comments. This approach was clearly a design to make capital out of something not in the record. . ." We do not feel that the record in our case supports such a conclusion.

Considering the summation and the record as a whole, we conclude that these comments were not improper.

Point of error No. 1 is respectfully overruled.

Point of error No. 2 challenges the jury finding that plaintiff sustained a loss of earning capacity amounting to $16,000.00, on the ground that such finding is against the great weight and preponderance of the evidence and is manifestly wrong. The main basis of this point is that the plaintiff testified that after the collision and his hospitalization he went back to work for the same employer, doing the same kind of work, making approximately the same hourly wage, and that his income was approximately the same. There was other evidence, however, to the effect that plaintiff was not able to work overtime after the injury as he had prior thereto; that he works 10% to 20% less now than before; that his injury continues to cause him pain and will likely do so in the future; and that surgery may eventually be necessary.

Defendant apparently takes the position that if there has been no diminution in wages or income as a result of the injury, there can be no recovery for reduced earning capacity. We do not agree. Reduced earning capacity is not necessarily the same as reduced earnings. One may have a definitely reduced capacity to earn throughout his remaining reasonable life expectancy, and yet still be making as much money a relatively short time after the injury as he was before the injury. Factors such as stamina, efficiency, ability to work with pain, and the weakness and degenerative changes which naturally result from an injury and from long suffered pain are legitimate considerations in determining whether or not a person has experienced an impairment in future earning capacity. Reduction in actual earnings is the best way to show a reduction in earning capacity [McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710 (1943)] but it is not the only way such can be shown. Missouri, K. & T. Ry. Co. of Texas v. Rogers, 201 S.W. 417 (Tex.Civ.App. Amarillo 1918, no writ); Dallas Consolidated Elec. St. Ry. Co. v. Motwiller, 101 Tex. 515, 109 S. W. 918 (1908). Our courts have consistently upheld judgments for reduced earning capacity, even though the plaintiff was making as much or even more money after the injury than before, where it was shown that pain, weakness, diminished functional

ability, or the like indicated that plaintiff's capacity to get and hold a job, or his capacity for duration, consistency or efficiency of work was impaired. Weatherhead v. Vavithis, 135 S.W.2d 1008 (Tex.Civ.App. Beaumont 1939, no writ); Wells v. Ford, 118 S.W.2d 420 (Tex.Civ.App. Beaumont, 1935, dism'd); Missouri, K. & T. Ry. Co. v. Rogers, supra; Dallas Cons. Elec. St. Ry. Co. v. Motwiller, supra.

■ We believe the evidence here was sufficient to justify the jury's finding of diminished earning capacity. If the plaintiff, with an established capacity to earn $150.00 to $200.00 per week prior to the injury, and with a reasonable life expectancy of 36 years, had experienced a 10% diminution in earning capacity, as the evidence would support, his loss would be in excess of $28,000.00. In view of this, we cannot say that the jury finding of a loss of capacity amounting to $16,000.00 was against the overwhelming weight of the evidence. Point of error No. 2 is therefore overruled.

The judgment of the trial court is affirmed.

CHADICK, C. J., did not participate.