**Motion for Rehearing Denied As Moot; Majority and Dissenting Opinions of June 26, 2018, Withdrawn; Reversed and Remanded and Substitute Majority and Dissenting Opinions filed October 30, 2018.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-16-00511-CV

## WESLEY FREDIEU, Appellant

## V.

## W&T OFFSHORE, INC., Appellee

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2013-06933**

## S U B S T I T U T E   D I S S E N T I N G   O P I N I O N [1]

The majority concludes that legally and factually sufficient evidence supports the jury's award for future lost earning capacity.  I respectfully disagree.

---

[1] Today the court denies W&T Offshore Inc.'s motion for rehearing as moot and issues a Substitute Majority Opinion. The Dissenting Opinion issued in this case on June 26, 2018, is withdrawn.

**Insufficient Evidence of Future Lost Earning Capacity**

Appellee W&T Offshore, Inc. challenges by cross-point the legal and factual sufficiency of the evidence supporting the jury's $950,000 award for appellant Wesley Fredieu's future lost earning capacity. This court should sustain the challenge.

More than seven decades ago, in *McIver v. Gloria*,[2] the Supreme Court of Texas recognized the inherent uncertainty in determining future lost earning capacity. Though Texas law leaves the determination to the jury's sound judgment and discretion, the law also imposes important boundaries on the jury's decision-making. First, the law requires the jury's verdict to be an intelligent judgment, based upon available facts.[3] Second, the law requires the verdict to be rooted in the "peculiar facts" and the damages to be "proved with that degree of certainty of which the case is susceptible."[4] Third, the verdict cannot be the product of "mere conjecture."[5] The degree of certainty the law requires varies from case to case. [6] Courts are called to assess the degree of certainty appropriate to the case at hand and to insist on proof that meets the standard.[7]

To assess the jury's determination of Fredieu's future lost earning capacity, we examine Fredieu's capacity to earn a livelihood before the injury and the extent to which the injury impaired that capacity.[8] Fredieu's future earning capacity is best

---

[2] 169 S.W.2d 710, 712 (Tex. 1943).

[3] *Id*.

[4] *Id*.

[5] *Id*.

[6] *Id*.

[7] *Id*.

[8] *See Scott's Marina at Lake Grapevine Ltd. v. Brown*, 365 S.W.3d 146, 159 (Tex. App.—Amarillo 2012, pet. denied).

shown by comparing his actual earnings before and after his injury.[9]  Nonetheless, the jury may base its finding of lost earning capacity on Fredieu's earning capacity before and after the injury.[10]

The jury found that $950,000 would fairly and reasonably compensate Fredieu for the loss of earning capacity that, in reasonable probability, Fredieu will sustain in the future, that resulted from the occurrence in question.  This court must decide whether the trial evidence is legally and factually sufficient to support the jury's finding of this amount of damages.

*Actual Earnings Before and After Injury*

Fredieu returned to work full time after his injured arm healed, earning a higher hourly wage post-injury than he earned pre-injury.  The majority suggests that Fredieu's higher earnings from his post-injury employment at Berry Brothers may not reflect his true earning capacity. The reason, says the majority, is that Fredieu someday might lose the current, higher-paying job and, if that happens, Fredieu might not be able to replace it with a similar-paying job. Though this reasoning forms the undercurrent of the majority's analysis, it has no factual support in the evidence.

The record contains no testimony that would support the majority's factual premise that because Fredieu found the Berry Brothers job through family members, he could not replace the job in the marketplace or find a Berry Brothers-like position that allows him to make the same wages while performing light-duty functions.  No expert testified that similar jobs do not exist or that due to Fredieu's particular circumstances, Fredieu would not be able to land such a position.  Fredieu offered

---

[9] *See McIver*, 169 S.W.2d at 712.

[10] *See Bonney v. San Antonio Transit Co.*, 325 S.W.2d 117, 121 (Tex. 1959); *Crown Plumbing, Inc. v. Petrozak*, 751 S.W.2d 936, 939 (Tex. App.—Houston [14th Dist.] 1988, writ denied).

no explanation for the lack of such evidence. Though Fredieu offered his own testimony that he was unaware of another such job, that evidence does not meet the legal standard and so amounts to no evidence. Because our record contains no testimony that Fredieu could not find a similar job if he lost his employment with Berry Brothers, any loss-of-future-earning-capacity determination based on this assumption amounts to mere conjecture and is not an intelligent judgment rooted in the peculiar facts of the case.[11] The record contains no evidence showing that Fredieu's earning capacity at the time of trial would not represent his future earning capacity.

### The Expert's Testimony

Significantly, Fredieu's expert witness, economist Kenneth McCoin, Ph.D. did not offer any opinion on Fredieu's lost earning capacity. Rather, McCoin testified as an economist to calculate the time-value of money, the probable number of years that Fredieu would work in the future, and other figures used in calculating lost earning capacity.

McCoin performed two calculations, but he said his calculations were just a "tool" or a "starting point." McCoin did not testify as to what Fredieu's average income would be over the remaining years of Fredieu's estimated work life; instead, McCoin said he was giving the jury a tool to calculate damages based on the jury's determination of what Fredieu would earn in the future, presumably based on other trial evidence. Thus, McCoin's testimony alone would not allow a reasonable factfinder to find Fredieu's future lost earning capacity. Though McCoin's testimony, if combined with trial evidence showing that Fredieu cannot reasonably expect to hold a job paying more than $8.65 per hour, would allow a reasonable

---

[11] *See McIver*, 169 S.W.2d at 712.

factfinder to set Fredieu's future lost earning capacity at $950,000, neither the majority nor Fredieu cite to trial evidence showing that Fredieu cannot reasonably expect to hold a job paying more than $8.65 per hour. And, the trial evidence that Fredieu currently earns $23 per hour certainly does not support this proposition.

Citing authority stating that the best gauge of lost earning capacity is the delta between pre-injury earnings and post-injury earnings, W&T emphasizes that Fredieu's post-injury hourly wage ($23) greatly exceeds his pre-injury hourly wage ($16).[12] Under binding precedent, that fact should drive the analysis.[13]

Rather than presenting a calculation of Fredieu's future earning capacity based on the here and now, as the supreme court instructed in *McIver*,[14] McCoin performed his future-earning-capacity calculations using the wage from a lower-paying job Fredieu had three years before trial, coupled with the unsubstantiated assumption that if Fredieu were to lose his Berry Brothers job, he could not find a comparable one with comparable pay. But, even taking the unsubstantiated assumption as true and even using the pre-injury job data rather than the current job data, neither McCoin's calculations nor the jury's award find support in the record evidence.

McCoin's calculation produced the number $1,035,424 for Fredieu's future lost earning capacity. This amount is the difference between what the majority calls "a pre-injury future earning capacity of $1,611,954" and a "post-injury future earning capacity of $576,530." This terminology suggests that the $1,035,424 amount covers lost earning capacity from the date of injury forward, and thus it is

---

[12] *See Strauss v. Continental Airlines, Inc.*, 67 S.W.3d 428, 436 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing the *McIver* legal standard).

[13] *See McIver*, 169 S.W.2d at 712.

[14] *See id*.

the sum of past lost earning capacity (from injury through trial) and future lost earning capacity (from trial forward). But, McCoin's testimony does not address the dollar amount for Fredieu's future lost earning capacity—the loss of earning capacity that, in reasonable probability, Fredieu would sustain in the future.

At the time of the accident Fredieu was earning $16 per hour. At the time of trial—the starting point for calculating future lost earning capacity—Fredieu was earning $23 per hour, according to Fredieu's own, undisputed testimony. *McIver* teaches that current earning capacity stands as the best indicator of future earning capacity,[15] yet, as noted, instead of using this key metric, McCoin's calculation of Fredieu's future earning capacity uses earnings data that predated Fredieu's current employment and fell far below Fredieu's post-injury earnings — an approach at odds with the authority W&T cites. Despite the flaws in this approach, the majority relies on McCoin's testimony to find the trial evidence legally and factually sufficient to support the jury's award of $950,000 for future lost earning capacity.

McCoin first calculated Fredieu's future lost earning capacity in 2012, before Berry Brothers hired Fredieu in 2014. At trial, McCoin performed a second calculation, in which he purported to account for Fredieu's earnings from his post-injury job with Berry Brothers. Under the unambiguous language of the jury charge, future lost earning capacity is measured from the time of trial forward. But, McCoin did not provide evidence of future lost earning capacity using that period.

The majority concludes that McCoin's expert testimony "established a range for Fredieu's future lost earning capacity between $665,424 on the low side and $1,035,424 on the high side." It did not. First, McCoin did not testify that Fredieu suffered a lost earning capacity in any amount. Rather, McCoin performed

---

[15] *See id.*

calculations purporting to show what the lost earning capacity would be (1) if the jury found that Fredieu would average $8.65 per hour in his future work and (2) if the jury found that Fredieu would average $20 per hour in his future work.[16] Second, McCoin did not perform the time-of-trial-forward calculation because he calculated lost earning capacity based on a trial date two and one-half years before the actual trial date. So, McCoin's analysis mixed apples and oranges. Still, the majority reasons that the "jury's $950,000 award falls within the range of expert testimony." As demonstrated below, the jury's award does not represent a permissible exercise of discretion based on the record evidence.[17]

McCoin estimated Fredieu's remaining work life at 35.8 years, but McCoin made that estimate 2.5 years before trial. So, at trial, the remaining-work life years were 2.5 years fewer than McCoin's calculation reflected. At trial, Fredieu had only 33.3 remaining work-life years, representing 93% of the estimated work life McCoin used for his calculations (33.3/35.8=93%). Presuming that Fredieu earned $8.65 per hour for the rest of his working years, McCoin calculated Fredieu's future lost earning capacity from 2.5 years before trial to be $1,035,424. Thus, McCoin's testimony shows that if Fredieu were to earn $8.65 per hour for the rest of his work life (the next 33.3 years), Fredieu's future lost earning capacity would be $963,117 (93% x $1,035,424=$963,117), which is effectively what the jury found ($950,000).

---

[16] The majority states several times that McCoin based his second calculation on Fredieu's "post-injury wages." *See ante* at 42. As the majority acknowledges, McCoin based his second calculation on a wage of $20 per hour, which Fredieu earned for only two months before Berry Brothers increased his wage to $23 per hour. The record shows that Berry Brothers has been paying Fredieu $23 per hour since April 2014. Fredieu's wage at the time of trial (when McCoin performed his second calculation) was $23 per hour.

[17] The majority notes that McCoin estimated an "effective wage" of $28,756 per year based on Fredieu's job at Berry Brothers, but the majority fails to mention that McCoin calculated this wage on the premise that Fredieu was earning $20 per hour rather than the $23 per hour that Fredieu was earning at the time of trial.

Importantly, McCoin testified that he does not know what Fredieu will earn in the future, and McCoin did not opine that any number represented Fredieu's future lost earning capacity. At the time of trial, Fredieu was earning $23 per hour. Presuming that Fredieu would earn only $20 per hour for the rest of his work life, McCoin calculated that Fredieu's earning capacity going forward would be $946,530. Subtracting this number from 93% of $1,611,954 ($1,515,237) yields the future lost earning capacity based on Fredieu earning $20 per hour: $1,515,237 – $946,530=$568,706. So, even if the calculation is based on $20 per hour rather than the best indicator — Fredieu's current, time-of-trial wage of $23 per hour — the future lost earning capacity is nearly $400,000 less than what the jury found.

McCoin's 2012 calculation fails to account for Fredieu's current earnings level from his post-injury employment at Berry Brothers. Because this defect skews the calculation, any jury finding based on this calculation would not be an intelligent judgment based on the peculiar facts of the case.[18] In addition, the trial evidence would not allow a reasonable factfinder to find a reasonable probability that Fredieu will earn $8.65 per hour for the rest of his work life.

In 1973, the Sixth Court of Appeals stated in *Springer v. Baggs* that "[o]ur courts have consistently upheld judgments for reduced earning capacity, even though the plaintiff was making as much or even more money after the injury than before, where it was shown that pain, weakness, diminished functional ability, or the like indicated that plaintiff's capacity to get and hold a job, or his capacity for duration, consistency or efficiency of work was impaired."[19] The *Springer* case did not involve a plaintiff who made the same or more money after the injury than

---

[18] *See McIver*, 169 S.W.2d at 712.

[19] *Springer v. Baggs*, 500 S.W.2d 541, 544–45 (Tex. Civ. App.—Texarkana 1973, writ ref'd n.r.e.).

before.[20]  Since 1973, this court twice has quoted this statement from *Springer*, but in neither case did the plaintiff make the same or more money after the injury than before.[21]

The majority cites *Plainview Motels, Inc. v. Reynolds*, a case in which the trial evidence showed that the plaintiff-dentist earned more money in the year after the accident than he had earned in any prior year.[22]  But, evidence at trial also showed that the plaintiff earned less after the year following the accident and that the plaintiff was earning substantially less at the time of trial than he would have been capable of earning but for the injury he sustained in the accident.[23]  The majority has not cited any case in which the plaintiff was earning more at the time of trial than the plaintiff was earning at the time of injury.  The time-of-trial earning capacity is the metric that matters most.

Considering the trial evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support the finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, the trial evidence would not enable reasonable and fair-minded people to find that $950,000 would fairly and reasonably compensate Fredieu for the loss of earning capacity that, in reasonable probability, Fredieu will sustain in the future, that resulted from the occurrence in question.[24]  Thus, the trial evidence is legally insufficient to support the jury's

---

[20] *See id*. at 544–45.

[21] *See Metropolitan Life Ins. Co. v. Haney*, 987 S.W.2d 236, 244–45 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *Tri-State Motor Transit Co. v. Nicar*, 765 S.W.2d 486, 492–93 (Tex. App.—Houston [14th Dist.] 1989, no writ).  The majority quotes this court's quotation of *Springer* in the *Tri-State Motor Transit* case.  *See ante* at 36 & 40.

[22] *See Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 38 (Tex. App.—Tyler 2003, pet. denied).

[23] *See Plainview Motels, Inc*., 127 S.W.3d at 36–38.

[24] *See City of Keller v. Wilson,* 168 S.W.3d 802, 823, 827 (Tex. 2005) (articulating the general standard of review for legal-sufficiency challenges); *Mid-Century Ins. Co. of Tex. v. McLain*, No.

9

finding of $950,000 in future lost earning capacity.[25]  In the alternative, even if the evidence were legally sufficient, examining the entire record, considering both the evidence in favor of, and contrary to, the challenged finding and considering and weighing all the evidence, the jury's finding of $950,000 in future lost earning capacity is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[26]

**Conclusion**

The Supreme Court of Texas says the best indicator of future earning capacity is current earning capacity. Yet, Fredieu's expert McCoin did not base his calculation on Fredieu's current earning capacity.  No evidence shows that Fredieu lacks capacity to get and hold a job, and no evidence shows impairment of Fredieu's capacity to continue in his current job.  In addition, the trial evidence would not allow a reasonable factfinder to find a reasonable probability that Fredieu will earn $8.65 per hour for the rest of his work life, and absent such evidence, McCoin's testimony does not suffice to sustain the jury's award of  damages for future lost

---

11-08-00097-CV, 2010 WL 851407, at *3–5 (Tex. App.—Eastland Mar. 11, 2010, no pet.) (mem. op.) (holding that the trial evidence was legally insufficient to support a finding of the amount of future lost earning capacity found by the jury); *Strauss*, 67 S.W.3d at 434–35 (applying general standard of review for legal-sufficiency challenges to attack on jury's lost-earning-capacity finding).

[25] *See City of Keller,* 168 S.W.3d at 823, 827; *Mid-Century Ins. Co. of Tex.*, 2010 WL 851407, at *3–5; *Strauss,* 67 S.W.3d at 434–35.

[26] *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998) (articulating the general standard of review for factual-sufficiency challenges); *Mid-Century Ins. Co. of Tex.*, 2010 WL 851407, at *3–5 (concluding that the trial evidence was factually insufficient to support a finding of the amount of future lost earning capacity found by the jury); *Border Apparel-East, Inc. v. Guardian*, 868 S.W.2d 894, 899 (Tex. App.—Corpus Christi 1993, no writ); (holding that the trial evidence was factually insufficient to support a finding of the amount of future lost earning capacity found by the jury); *Loyd Electric Company, Inc. v. Millett*, 767 S.W.2d 476, 483–84 (Tex. App.—San Antonio (Tex. App.-San Antonio 1989, no writ) (holding that the trial evidence was factually insufficient to support a finding of the amount of future lost earning capacity found by the jury).

earning capacity. Even assuming the jury credited McCoin's testimony, the evidence is legally insufficient, and, in the alternative, factually insufficient, to support the jury's award of $950,000. This court should sustain W&T Offshore's cross-point.


/s/     Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jewell (Boyce, J., majority).